No. 17,361.

KNAPP ET AL. *v.* COLORADO RIVER WATER
CONSERVATION DISTRICT ET AL.
(279 P. [2d] 420)

Decided January 24, 1955.

Messrs. BARNARD & BARNARD, for plaintiffs in error.

Mr. FRANK DELANEY, for the Water Conservation District, and Palisade District.

Mr. JOHN C. BANKS, Mr. GLENN G. SAUNDERS, for defendant in error City and County of Denver.

Mr. OMER GRIFFIN, for defendant in error Carl R. Taussig.

Mr. HUGH GILMORE, for defendants in error Grand County Company and Frank C. Black.

*En Banc.*

MR. JUSTICE CLARK delivered the opinion of the Court.

IN this cause, now before us on review for the second time, the trial court, on rehearing following remand, determined total abandonment of the water rights under priority No. 129 in water district No. 51, by decree awarded to the Williams Fork Ditch on December 11, 1906, for 150 second feet of water for irrigation purposes, with priority thereto as of June 28, 1902, and entered judgment accordingly.

The opinion of this Court upon the first review of this matter is entitled, *Peterson v. Colorado River Water Conservation District* and reported in 127 Colo. 16, 254 P. (2d) 422. Following trial in the first instance, Peterson conveyed all of his interest in said ditch and water rights to his associates, Harry G. Knapp and Myrlie L. Knapp, who appear here as plaintiffs in error.

The history of the Williams Fork Ditch, as well as the facts then pertinent, are set forth at considerable detail in our former opinion, and, in the main, we shall avoid repetition thereof herein. It must be borne in mind that the Williams Fork Ditch, due to the nature of the terrain traversed by it, was one of much more than usual difficulty, both in its construction and maintenance. It never was constructed to a sufficient capacity to carry the full amount of 150 second feet of water decreed to it, and because of this admitted fact, it is conceded on behalf of plaintiffs that sixty second feet thereof definitely was abandoned. The Middle Park Land and Livestock Company was incorporated in 1908 and shortly thereafter became record owner of said ditch and water rights and continued as such until 1923 when it lost title through foreclosure of a deed of trust executed by it in 1915 to the United States National Bank, as trustee. During its period of ownership the Middle Park Company used said ditch and water right to some considerable extent until 1915, when one of the twin inverted siphons crossing the Williams Fork in a chasm, collapsed. The remaining

siphon was continued in use until 1919 or 1920 when it, too, collapsed and went out of service. Neither was rebuilt and admittedly no use has been made of either said ditch or water right since that time.

For a proper understanding of the problem now before us it also is well to call attention to the fact, as stated in the Peterson case, that from and including 1915 to 1920 one Black was ranch manager and likewise owner of over 170,000 of the 200,000 shares of the corporate stock of the Middle Park Company. At the time of trial Black, the only witness to appear at that hearing who had any financial interest in the property prior to foreclosure, testified that in 1920, in the face of the mortgage and delinquent taxes, the financial burden of repairing the ditch so as to make it workable was beyond his ability; that he had no intention of doing anything about it, and, in effect, abandoned not only the ditch but the ranch as well. At the close of the hearing in that case the trial judge from the bench announced at considerable length his impressions, findings and conclusions, the portion thereof pertaining here being to the effect that he considered Black and the company as identical; that Black very definitely had abandoned the water right involved in the cause, and it having been thereby intentionally abandoned, there was nothing that any successor in title did or could do thereafter that "would breathe life into the corpse of that water right." For details, see the long quotation from the trial court's observations in the opinion in the Peterson case, supra.

In reversing the judgment in the Peterson case we held that the findings and conclusions of the trial court in several respects were inadequate to support its judgment of total abandonment. In the first place, the trial court based its judgment wholly upon its determination of abandonment of the water right by Black and failed to consider events thereafter occurring. We held this to have been error for the reason that Black, notwithstanding that he was manager of the ranch and

holder of 17/20ths of the captial stock of the corporation, or even had he had record title in his own name, could not expressly abandon the water right in manner effective against the trustee and bondholders under the trust deed without their knowledge or acquiescence. In the record then before us the trial court had not found, and we were unable to determine, whether the trustee and beneficiary under the trust deed, which included said water rights in said Williams Fork Ditch as well as the ranch lands, had acquiesced in abandonment of all or any part of said water right, either (a) expressly, or (b) by "such continued period of nonuse as to result in abandonment by implication." Secondly, while apparent that whatever of said water rights that were in existence under priority No. 129 at the date of said trust deed, were covered by the lien created thereby, the findings of the court were not sufficient to permit determination of the extent thereof because: (1) The diversion works had not at that time been adequate to carry the full amount of the decree; (2) a portion of the remainder, the trial court found, had been abandoned prior to 1920; and (3) "Whether *all* or any part of said rights had been *otherwise* abandoned." (Emphasis supplied) The last item would appear to be dependent upon further development of the two preceding.

We have extended the foregoing discussion beyond what ordinarily would be required for the reason that, regrettably, it would appear disagreement has arisen between counsel and between court and counsel concerning the purport and effect of the opinion in the Peterson case, supra, much of the arguments presented in the briefs herein being devoted to that subject. We believe our former opinion to be clear and unambiguous, but if it would to some seem otherwise, the foregoing should eliminate the ambiguity. In the interest of additional clarity we might add that we ordered remand for further proceedings along the lines suggested, without limitation to answer only certain questions, or to any particular

period of time. Neither did we, by quoting, "approve" any of the findings or conclusions of the trial court in that case, but left the entire matter open for further consideration and redetermination in conformity with our former opinion.

Following remand, additional evidence was adduced, naturally cumulative to a considerable extent. At some stage of the proceedings the trial judge, upon request, in which all counsel of record concurred, and accompanied by said counsel, went upon the premises and on foot reviewed the line of said ditch throughout its length. His written findings are exhaustive and well prepared. Upon overruling plaintiffs' motion for new trial he added further comment by oral statement from the bench.

Referring now to the summary of argument, it first is contended on behalf of plaintiffs that by our decision in the Peterson case, we held, on the evidence there before us: (a) That there was no abandonment of the water right; (b) that Black did not abandon it; (c) that, "by quoting with apparent approval the language of the trial court in connection with the action and activities of Peterson and his associates, this Court rules out any acts of any owners of this right which occurred (1) prior to the foreclosure of the deed of trust by the trustee; and (2), after the acquisition of the right by Peterson, as constituting abandonment," leaving only the period between May 20, 1923, the date when the trustee procured deed following foreclosure, and August, 1928, when he conveyed to Peterson, to be explored by further proceedings, and that the evidence fails to establish abandonment during that period.

We have pointed out the fallacy of such an argument and, to what we have already said, add that no such strained construction can logically be read into the language of our former opinion. We simply held that, while Black might expressly abandon his personal interest in the water right, he could not also thereby relinquish the interests of the trustee and lien beneficiaries

unless it be shown that they acquiesced therein. That does not imply that it would have to be shown that they consented to Black's action, but that by their own conduct they did nothing to protect the right and thusly may be said to have concurred in its abandonment. Where the solution of the issue of abandonment of a water right depends upon determination of intention unexpressed, but evidenced by a period of long nonuse, inquiry may not be limited to the duration of ownership or occupancy of any one company, individual or group of individuals, but extends throughout the entire life of the project. Applying the rule to this case, it is, at first, conceded that the carrying facilities never, at any time, were constructed to the capacity required to accommodate the full amount decreed. Abandonment to the extent of that differential is admitted. No further abandonment occurred until after record title became vested in the Middle Park Company. From that time on, the field of inquiry on the issue of abandonment is open to the use and nonuse of the water right, and the action and nonaction of the successive owners of title and interests therein with respect to its preservation and continued existence to the time of trial. That includes, in addition to Black, the Middle Park Company, the trustee under its mortgage, the bondholders thereunder, including the committee, the claimants under treasurer's deed pursuant to tax sale, Peterson and his associates, and any or all others who held an interest in said property during those years. In this connection it must not be overlooked that when Black "walked off" and abandoned the project in 1920, record title was in the corporate name of the Middle Park Company, and that it was not divested of title until issuance of deed following foreclosure in August, 1923.

The remaining points, set forth as constituting alleged error, all relate to findings of the trial court respecting the extent of diversion and partial abandonment, but where, as here, the ultimate conclusion and judgment and sole remaining issue concerned only the question of

total abandonment, the lesser became merged in the greater and are removed automatically from further consideration. The trial judge expressed his belief that findings relating to partial abandonment were unnecessary and explained that they were inserted only to meet what he conceived to be the requirement of our pronouncement in the Peterson case.

Actually we now have disposed of all matters in plaintiffs' summary of points with the possible exception of the last sentence of the first, which raises the question of sufficiency of the evidence, but as we already have said, erroneously undertakes to confine the time to the few years intervening between May, 1923, and August, 1928. Having declined to accept such limitation, we might conceivably here rest our labors in that we have covered all points presented. By so doing we might lay ourselves open to accusation of making use of a technical mechanism to evade discussion of that which now is the only possible remaining question manifesting itself in the case, namely, sufficiency of the evidence to support the findings of the trial court. Certainly the findings support the judgment.

It is admitted that one of two inverted siphons equal in size and about 700 feet in length, went out of condition about 1915 and the other in 1919 or 1920; that neither has been rebuilt; and that no water whatsoever has been diverted or carried by said Williams Fork Ditch since the second of said siphons collapsed.

The record in the case comprises over 1500 folios rendering a complete summarization thereof impossible. Certain facts appear therefrom to be beyond dispute. Black vacated and abandoned his interest in 1920; no new manager came on; and the Middle Park Company did nothing further whatsoever. Foreclosure of the trust deed occurred and deed issued to the trustee May 26, 1923. The premises, with the exception of one year when leased without water, remained vacant and unoccupied from 1920 until after 1930. During all of that time and

since, nothing was done in the way of maintenance, upkeep or preservation of said ditch. Not one cent was spent to that end. Its expensive and extensive flumes, siphons and other structures were left to rot and ruin, and when they collapsed and fell, no one exerted the least effort to even preserve any of the materials or to salvage it that it might be used again. Pipes that cost many hundreds of dollars were left to wash away down the stream, or were permitted to be carried away by strangers who valued their worth for some purpose of their own. In the end this once expensive installation became but desolation and utter ruin; wholly beyond repair or further usefulness except by complete reconstruction throughout.

Conrad Schrefferman, a general contractor of many years' experience and a partner of Brown and Schrefferman, which held the tax certificates on the ranch and water rights, later ripening into a tax title on issuance of a tax deed, testified that he examined the ditch in 1928, and that the structures therein were in such bad condition as to require reconstruction. He further testified that the purpose of his inspection was to determine what they should do about the property should they acquire title, and tried to sell out because the reconstruction of the ditch would be so great they would not be interested. Later he did sell the interest acquired by tax deed for just about the amount of taxes involved, without profit.

Regardless of the above-mentioned tax title, it generally is considered that title to the property rested in the trustee from 1923 to 1930. There was no income from the property and the trustee had no funds with which to do anything. The bondholders were organized and appointed a committee to look after their interests. The trustee reported to the committee, and perhaps to others interested, that the property, being unoccupied, was deteriorating, and suggested that a receiver be appointed that the investment might be protected and the improvements maintained and preserved. The suggestion was

not adopted; no work in the way of repair, maintenance or preservation of property was performed; no funds for such, or for any purpose of benefit to the premises, were provided; absolutely nothing towards that end was undertaken. Even payments of taxes were omitted, resulting in the tax sale hereinbefore mentioned. The sole concern of all persons then interested in the property was to sell it as quickly as possible, without added cost or expense. At that, it took nearly seven years to get rid of it on a complicated trade-in proposition.

At this point Peterson took over. He admits that at that time the ditch was completely out of use, the fences were down, and the fields overgrown with brush. He further admits that during his many years of ownership he put forth no effort toward the further rehabilitation of the ditch or any of its structures. Further evidence is more in conflict. Peterson testified that the first thing he did was to repair the fences, which he asserts took him the better part of two years. He then commenced reclearing the land and shaping it for tillage and crops. He excuses his failure to commence rehabilitation of the ditch by stating that he did not wish to commence any such program until he had funds available to complete the job and estimated that that would require some $50,000 to $60,000. He asserted that on three different occasions he had negotiated loans in sufficient size to rehabilitate the ditch and each time circumstances beyond his control prevented him from carrying out the transaction. He states that in other instances he undertook negotiating to sell seventy-five second feet of the water right for enough money to enable him to reconstruct the ditch, but that in these he also failed. He, and others interested in title since the Middle Park Company lost it, emphatically deny any intention to abandon the water right, admitting at the same time that they neither used nor maintained it, and did nothing to protect or preserve it. On the whole their conduct is much more indicative of being speculative than operative.

52

We would like to quote the findings of the trial judge at some length, but space forbids; suffice to say that in relation to the facts in general, they are in accord with the foregoing. Specifically, he further stated "That no part of the water right represented by said priority No. 129 has been used for any purpose since 1920" or for about twenty-six years prior to the commencement of this action, and that during all of said period of nonuse "the physical structures originally designed for carrying it have been incapable of transmitting any water whatsoever for any beneficial use"; that notwithstanding that the company, the trustee, bondholders and their committee "knew of the distressed condition of the property," "no one connected with said property took any action to protect the water rights or preserve the ditch." Particularly with reference to Peterson, the trial judge further found that: "Nothing was done by said Peterson and his successors in interest to reconstruct the said ditch or to use the water right for a period of approximately sixteen years after he acquired title to the lands formerly irrigated in part by water diverted under said priority 129, and prior to the institution of this suit or action," and that "the excuses offered * * * for failure to use the water right are not sufficient to negative the existence of an intent to abandon arising from all the facts and circumstances established by the evidence." He concluded by stating that "The facts are clear and convincing to the court that the water right has been abandoned by nonuse coupled with intent not to resume its use." This conclusion, variously worded, appears several times in the trial court's findings.

■■ As beneficial use is the ultimate essential in the establishment of a water right, so it also is essential in the perpetuation of such right. Notwithstanding that it has been held that water when reduced to possession is personal property (Brighton Ditch Co. v. City of Englewood, 124 Colo. 366, 373, 237 P. (2d) 116), a water right is something vastly different and, when perfected

by appropriation and beneficial use of water, constitutes realty in the nature of a possessory right. "Although a water right has attained to the dignity of real property, it can not be said that it has attained to the dignity of an estate in fee or a freehold estate. It is still a possessory right, even after its consummation, and dependent on the continuous use of the water, and a failure to comply with this condition subjects the right to loss by abandonment * * *." Vol. 2, Kinney on Irrigation and Water Rights (2d ed.), page 1978, section 1100. In *Putnam v. Curtis*, 7 Colo. App. 437, 442, 43 Pac. 1056, the learned author of the opinion in that case recognized the foregoing distinction and principle when he said: "An abandonment of property held by *possessory title* takes place instantly when the occupant deserts it without an intention of ever reclaiming it for himself, and careless of what thereafter may become of it." (Emphasis supplied)

In common usage, to abandon means to forsake; give up wholly; quit; when applied to a possessory right, such as is a water right, it means to discontinue, desert, relinquish, surrender, vacate or give up. Its opposite is to occupy, keep, maintain, use, preserve and protect. In water and irrigation matters it has no special, mystical or different meaning than that well and generally recognized in all instances where are involved legal rights, the preservation and continuation of which are dependent upon possession, use or occupancy. That the life of such right terminates and that it goes completely out of existence upon abandonment, is a principle so well recognized that citation of authority to support it is unnecessary. In the absence of expressed declaration, the difficult question for determination is whether, at any time following its acquisition, the owner of the right decided to quit, surrender or give it up. "Although * * *, the intent of the party charged with abandoning a water right, ditch, or other works, is a necessary element to work an actual abandonment upon his

part, the intent to abandon may be implied, and an actual abandonment decreed by the Court from the acts of the appropriator or owner, or from his failure to act; and that, too, in the absence of any direct statement by him that he has abandoned the right. Even in the face of declarations of the party charged, that he still owns the right and has not abandoned it, without any act of possession or user of the right by him, the Court will declare the right to be abandoned, should the facts and circumstances in the case show that there was an actual abandonment." Vol. 2, Kinney on Irrigation and Water Rights (2d ed.), page 1988, section 1104.

Further, to the effect that oral declarations of ownership, in the absence of showing of reasonable justification for nonuser, are insufficient to overcome the presumption of intent to abandon, as is also the fact that the right appears to have been carried through a continuous chain of paper title (a contention here urged by plaintiffs), see, *Green Valley Ditch Co. v. Frantz*, 54 Colo. 226, 233, 234, 129 Pac. 1006, and cases therein cited.

Decisions of courts of last resort are legion in support of the firmly recognized principle that where a water right is not used for an unreasonable period of time, intent to abandon it may be implied. To make analysis of the numerous Colorado cases so holding is unnecessary. This Court, in *Farmers Reservoir and Irrigation Co. v. Fulton Irrigation Ditch Co.*, 108 Colo. 482, 487, 120 P. (2d) 196, stated: "The law in Colorado on abandonment of water rights has been settled for many years." Then follows in the opinion a discussion of the meaning of the term "abandonment"; that it is a question of intent, nonuse alone being insufficient, and then the following: "But where by clear and convincing evidence it is shown that for an unreasonable time available water has not been used, an intention to abandon may be inferred in the absence of proof of some fact or condition excusing such nonuse." citing cases. Others to the same effect might well be added, such as, *Alamosa*

*Creek Canal Co. v. Nelson,* 42 Colo. 140, 143, 93 Pac. 1112; *Parsons v. Fort Morgan Reservoir and Irrigation Co.,* 56 Colo. 146, 136 Pac. 1024, and decisions cited at page 151 of the official report.

 The issue of intent in such instance becomes a question of fact for determination by the trial court from all the pertinent facts and surrounding circumstances, and where supported by competent evidence such finding will not be disturbed on review. This rule is expounded in several of the cases above referred to, and together with the principle that nonuse for an unreasonable period of time raises an implication or presumption of abandonment, finds expression in more recent decisions of this Court. Especially applicable is *San Luis Valley Land and Cattle Co. v. Hazard,* 114 Colo. 233, 236, 157 P. (2d) 144, where the court said: "The trial judge, having both heard the testimony and viewed the premises, was better able to understand and apply the evidence than are we on review." In *Mason v. Hills Land and Cattle Co.,* 119 Colo. 404, 408, 204 P. (2d) 153, the author of the opinion summarized the above discussed topics, stating inter alia, "To rebut the presumption of abandonment arising from such long period of nonuse, there must be established not merely expressions of desire or hope or intent, but some fact or condition excusing such long nonuse. In the instant case, the existence of such a fact or condition was an issue to be determined by the trial court and the evidence amply supports its determination." This passage, with added material, is quoted with approval in our opinion in *Mountain Meadow Ditch and Irrigation Co. v. Park Ditch and Reservoir Co.,* 130 Colo. 537, 277 P. (2d) 527, 529.

 To the holding that mere "expressions of desire or hope or intent" in abandonment cases are insufficient excuse for nonuse of a water right, we also add that, neither may such nonuse be justified by a showing, as contended in the instant case, that the owner intended

to sell the property, or that it was kept listed with real-estate brokers. Speculation on the market, or sale expectancy, is wholly foreign to the principle of keeping life in a proprietary right and is no excuse for failure to perform that which the law requires.

The judgment is affirmed.