MR. JUSTICE GROVES
delivered the opinion of the Court.
Plaintiff-appellant (CF&I) commenced proceedings to change the points of diversion of decreed water rights. At the conclusion of CF&Ts testimony, the court dismissed the proceedings on the ground that the water rights had been abandoned. We affirm.
The city of Trinidad timely filed a statement of opposition, alleging abandonment. About a year later and prior to any hearing the Purgatoire River Water Conservancy District (called the District) entered its appearance and alleged abandonment. The court held a hearing under CF&I’s application for change of points of diversion approximately two months following the District’s entry of appearance.
For many years prior to 1918 CF&I operated a, number of small coal mines and had washeries at each mine. The water here involved was used at the Sopris Mine in the Purgatoire River Valley. In 1918 CF&I constructed a central washery at Pueblo and discontinued the smaller washeries. At that time it removed its pipeline and pumps used to convey the water at the Sopris Mine. CF&I has made no use of this water since that time.
In 1950 CF&I opened its Allen Mine and in 1959 made an economic feasibility study as to a washery at the Allen Mine. Nothing resulted from this. In 1972 it made a preliminary design study on the same subject. The present proceeding is to authorize points of diversion so that the water could be used in a washery at the Allen Mine. However, CF&I has not yet determined whether it will construct such a washery. In its brief CF&I states:
“The economic (or cost) factors considered by CF&I are constantly changing and it may become economically feasible to construct the washery at the Allen Mine at any time.” (Emphasis supplied).
I.
CF&I asked reversal for the reason that the District did not *138 make a timely appearance and, not having a vested interest in water rights, did not have standing to object. It is not contended that Trinidad’s objection was not timely nor that it did not have standing. As already indicated, the case was dismissed at the conclusion of CF&I’s testimony, and neither Trinidad nor the District presented any evidence.
The participation in the hearing by Trinidad was limited solely to the making of objections and to cross-examination of CF&I’s witnesses.
Counsel for the District made three objections. After the first objection, counsel for CF&I withdrew his question. CF&I cannot complain when it voluntarily removed the objection from consideration by the court. The second was to join in an objection already made by counsel for Trinidad. The third was to the admission of an exhibit offered by CF&I, which objection was overruled. Therefore, the objections by the District could not have prejudiced CF&I.
We have considered the transcript of the evidence, with and without the cross-examination of witnesses by the District. All matters material to the court’s findings and conclusions were developed fully in the cross-examination by Trinidad. In other words, if there had been no cross-examination by the District, the basis and soundness of the court’s conclusion of abandonment would remain unchanged. The appearance of the District, therefore, was without prejudice to CF&I. If Trinidad prevails on the issue of abandonment, lack of timeliness or standing on the part of the District will not breathe life into the dead right.
With the foregoing determination on our part, we do not reach the questions of timeliness of the District’s protests and of its standing to do so. If the statute were unchanged we might have an obligation to the water courts of the state — and to those who might be concerned — to rule on timeliness of objection. The statute, however, has been amended in material part as to the question here, and any ruling by us would be largely, if not wholly, academic to the water fraternity. 1969 Perm. Supp., C.R.S. 1963, 148-21-20(1) and 1971 Perm. Supp., C.R.S. 1963, 148-21-20(1).
*139 II.
No citation of authority is required for the basic proposition that abandonment occurs when there is non-use coupled with an intention to abandon. Non-use for an unreasonable period creates a rebuttable presumption that there was an intention to abandon. Sieber v. Frink, 7 Colo. 148, 2 P. 901 (1883). Here, 54 years of non-use was an unreasonable period in the light of 20 years being so held in San Luis Valley Irrigation District v. Alamosa, 55 Colo. 386, 135 P. 769 (1913), and 40 years being so held in Sieber v. Frink, supra. The question thus becomes, Did the trial court err in finding that CF&I did not overcome the presumption of abandonment?
The CF&I position is contained in the following excerpts from its brief:
“The uncontradicted facts established by CF&I establish a valid reason for the original and continued nonuse of this water. CF&I bowed to the economic facts of life in 1918 and, since that date, it has continually surveyed the constantly changing economic facts. Neither ‘hopes’ nor ‘desires’ have been involved in this process. The only reason for the nonuse of these water rights stems from those economic facts and, unfortunately, no person or company is immune from economics.
* * *
“We submit that the water court erred as a matter of law in that it applied a rather simplistic test to the undisputed facts of this case. Under Colorado law, the intent to abandon cannot be presumed or inferred unless there is an absence of proof of some fact or condition excusing the nonuse. In this case, there was no absence of such proof, but, rather, CF&I established by undisputed facts that there was ‘some fact or condition excusing the nonuse.’ Substantial economic and practical factors required that the use of these water rights be discontinued and those factors remained in force as compelling reasons for continued nonuse until such time as CF&I went to a single source of coking coal. At that point, the shifting factors of transportation costs, mining costs and *140 washing costs, together with the high capital expenditure required for a new coal washery at the Allen Mine, have had an inhibiting effect, but, notwithstanding these practical and economic difficulties, CF&I has set aside the requisite land for this washery, caused an economic feasibility study to be performed and secured a preliminary design study.”
We approve, however, of the following statement by the trial judge further in the judgment:
“To rebut the presumption of abandonment arising from such long period of nonuse, there must be established not merely expressions of desire or hope or intent, but some fact or condition excusing such long nonuse.’ Knapp v. Water District, 131 Colo. 42, 279 P.2d 420. The claimed economic factors do not satisfactorily accomplish this.”
We cannot accept the economics-justified-non-use argument. Considering the large demands for all of the appropriatable water in this state and the consequent high value of water, it might be said that nearly every abandoned water right could have its non-use justified by the economics that might prevail sometime in the future for use of this water at some other place. This gleam-in-the-eye philosophy is not consistent with the protection and preservation of existing water rights.
CF&I has cited Hallenbeck v. Granby Ditch & Res. Co., 160 Colo. 555, 420 P.2d 419 (1966), several times in its brief. It is true that it was there said that a “reasonable justification for non-use may very well exist where it can be shown that economic, financial or legal difficulties or natural calamities prevented the storing of all the water that was originally decreed.” In Hallenbeck financial difficulties, especially during the depression years, curtailed the reservoir owner’s ability to keep the reservoir in peak operating condition. It appears that there were continuous expenditures and that as the owner’s financial capability increased, the construction was performed which permitted full use of the decreed water rights. Hallenbeck presented a vastly different picture than we have here. CF&I made it impossible to divert water at its decreed points and did not use a drop of *141 the water for 54 years.
In viewing the issue of abandonment, one must look to the water right as decreed and not to some possible hoped-for future use at some undetermined place.
III.
We find the argument that washing coal constitutes a low consumptive use of water to be without merit.
Judgment affirmed.
MR. JUSTICE LEE does not participate.