## No. 16,112.

MASON v. HILLS LAND AND CATTLE COMPANY ET AL.
(204 P. [2d] 153)

Decided March 7, 1949.

Mr. L. R. TEMPLE, Mr. ALBERT P. FISCHER, for plaintiff in error.

Mr. GEORGE J. BAILEY, for defendants in error.

*In Department.*

MR. JUSTICE STONE delivered the opinion of the court.

PLAINTIFF in error petitioned to change the point of diversion of the Accomodation Ditch with its decreed priority for 12.5 cubic feet of water per second of time of date July 15, 1887. Defendants in error joined in protest, asserting abandonment both of the Accomodation Ditch and its priority. Upon trial of the issue, the court found in favor of protestants that the ditch and its priority had been abandoned and enjoined petitioner from diverting water in virtue of said priority. The one point here urged is the sufficiency of the evidence to sustain finding of abandonment.

In summary, the evidence discloses that petitioner and his wife purchased certain land together with the Accomodation Ditch and its decreed priority in 1940 from Jane Munroe; that she acquired the property from her husband Pete Munroe, who was the claimant upon the adjudication of the priority of the ditch in 1902 and who owned it until his death in 1933; that a short distance below its head gate the ditch extends along the side of a very steep hill composed mostly of loose gravel; that in 1905 the Arnold Ditch was constructed along the same hillside from forty to fifty feet above the Accomodation Ditch; that in the construction and cleaning of the Arnold Ditch dirt slid down into the Accomodation Ditch, but that the latter had been washed out in other places before, and the owner of the Accomodation Ditch

never made objection to its obstruction, and that toward its lower end waste water from the Arnold Ditch flowed into the Accomodation Ditch. There was no evidence of irrigation from this ditch or its water right except in the year 1908, and no evidence as to the amount of land irrigated thereby in that year. There was some evidence as to water being seen in the ditch in a few subsequent years, the witness remembering having watered horses in the ditch, but whether it was diverted through this ditch or was waste water flowing therein from the Arnold Ditch was not stated. Another witness who had lived in the neighborhood and could remember the ditch for at least forty years; who had crossed it going to and from work during many years, and had seen it every year except during the period from 1932 to about 1936, testified that there had been no water in the ditch for forty years. There was some testimony as to Munroe having worked on the ditch about 1908, or shortly thereafter, and of his hiring men who worked there as late as 1916, but an adjoining owner who irrigated through the Arnold Ditch testified that the last time he saw Munroe or anyone working on the ditch, which ran through his field, was about 1908. There was some evidence of Munroe asking witnesses to work on the ditch and their refusal, but nothing as to the specific work sought or as to the reason for the work not being done. There was testimony of two witnesses as to frequent statements by Munroe as to his ambition to have all his land in meadow under irrigation from the ditch, but both witnesses were people to whom he attempted to sell his ranch and this water right. Just prior to his purchase of the property in 1939 and shortly after the purchase in 1940, petitioner had work done on the ditch with a caterpillar tractor and bulldozer and a gasoline shovel, but the work was not extensive and no attempt was made to repair the ditch where it had washed out along the steep hillside. At the time of the trial in September 1947, the ditch in some places was entirely

obliterated and in other places was grown up to mature willows, and in still others with mature stunted aspen trees. The water commissioner, who had been such since 1913, testified that during all that time no water had been delivered to the Accomodation Ditch, nor had he been asked to shut down any ditches for its benefit; that he had seen the ditch practically every year and never saw any water in it, and that there was sufficient water available in the stream to supply the ditch.

On such evidence as here meagerly reviewed, it is urged that while there can be no dispute as to the nonuse of the ditch and water for a period of almost forty years, yet there is no sufficient showing of intent to abandon to support the finding of the trial court.

As was said in *North American Exploration Co. v. Adams,* 104 Fed. 404, and quoted with approval in *Green Valley Ditch Co. v. Frantz,* 54 Colo. 226, at page 232 (129 Pac. 1006): "The abandonment of the right to divert and use the waters of a stream is not different in its nature or character from the renunciation of any other right which is asserted and maintained by its use. It may be express or implied. It may be effected by a plain declaration of an intention to abandon it, and it may be inferred from acts or failures to act so inconsistent with an intention to retain it that the unprejudiced mind is convinced of the renunciation." In *Sieber v. Frink,* 7 Colo. 148, 2 Pac. 901, we said: "A failure to use for a time is competent evidence on the question of abandonment; and if such nonuser be continued for an unreasonable period, it may fairly create a presumption of intention to abandon; but this presumption is not conclusive, and may be overcome by other satisfactory proofs." In *South Boulder Co. v. Davidson Co.,* 87 Colo. 391, 288 Pac. 177, we said: "Abandonment must be proven by evidence of nonuse and intention to abandon. Intention may be shown either expressly or by implication. The fact that a decreed appropriator of water has failed to use the same for a period of forty years evi-

dences an intention to abandon. While evidence of non-use for a period of forty years may not be conclusive of abandonment, a prima facie case thereof is so shown." In *Northern Colorado Irr. Co. v. Burlington D. Co.* 74 Colo. 159, 219 Pac. 1071, where there was evidence as to nonuse of the water for a period of approximately thirty years, we said: "Whether these facts were conclusive on the question of abandonment need not be determined. To say the least they raised a very strong presumption thereof, which the trial court was fully justified in finding was not rebutted by the claims and demands which plaintiff in error says it made from time to time." In *New Mercer Ditch Co. v. Armstrong,* 21 Colo. 357, 40 Pac. 989, where there was nonuse during a period of from eighteen to twenty-one years, we said: "This was an unreasonable length of time for an owner of a water right not to make any use thereof, to entitle him afterwards to reclaim it as against intervening rights." And in *Commonwealth Irr. Co. v. Rio Grande Ass'n,* 96 Colo. 478, 45 P. (2d) 622, we said: "The question of abandonment is one of intention. Nonuse alone is not sufficient. * * * But where by clear and convincing evidence it is shown that for an unreasonable time available water has not been used, an intention to abandon may be inferred in the absence of proof of some fact or condition excusing such nonuse."

We conclude from these statements that while the burden of proof of intent to abandon is on him who asserts it, yet such intent may be proved by evidence of acts and failures to act as well as by mere words; that nonuse constitutes such failure to act; that proof of nonuse for an unreasonable period establishes a presumption of abandonment and is prima facie proof thereof; that nonuse for the period here proved is an unreasonable period; that to rebut the presumption of abandonment arising from such long period of nonuse, there must be established not merely expressions of desire or hope or intent, but some fact or condition

excusing such long nonuse. In the instant case, the existence of such a fact or condition was an issue to be determined by the trial court and the evidence amply supports its determination.

Accordingly, the judgment is affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE HOLLAND concur.