## No. 28487

## Manor Vail Condominium Association, d/b/a Manor Vail Lodge v. Town of Vail, Colorado, and Community Television Investments, Inc.

(604 P.2d 1168)

Decided January 7, 1980.

Roath & Brega, P.C., Charles F. Brega, Roger P. Tomasch, for plaintiff-appellant.

Lawrence C. Rider, for defendant-appellee.

Dawson, Nagel, Sherman & Howard, William L. Hunnicut, Raymond J. Turner, for defendant-appellee, Community Television Investments, Inc.

*En Banc.*
JUSTICE LEE delivered the opinion of the Court.

Appellant, Manor Vail Condominium Association (Manor Vail), appeals from a judgment of the district court upholding the constitutionality of the 1968 and 1974 franchise ordinances enacted by the Town of Vail (Vail), governing rates to be charged for cable television service. The district court held that Manor Vail was estopped to challenge the rate structure of the 1968 ordinance as applied to it. It further held that there was a rational basis for the rate categories established by the 1974 ordinance and, thus, the ordinance was not unconstitutional. We affirm the district court.

I.

In 1968, Vail granted a franchise to Community Television Investment, Inc. (C.T.I.) to operate a cable television system in the Town of Vail. The system was initially authorized by Ordinance No. 3, Series of 1968.

The 1968 ordinance established two rate categories for monthly cable TV service. The first was applicable to "residential, trailer, apartment or business" installations; and the second to "lodges, hotels and motels." Those terms were not defined in the ordinance. Instead, Vail permitted C.T.I. to determine the category under which each customer would be classified and charged. Manor Vail was classified as "residential" and was charged the residential rate of $8 per month per unit, as contrasted with the $1 per month per unit rate charged "lodges, hotels and motels."

We do not find it necessary to address the merits of appellant's contention that it was misclassified under the 1968 ordinance, inasmuch as we agree with the district court that Manor Vail is estopped in its attempt to recover for the alleged overcharges from 1968 to 1974.

By its own admission, Manor Vail was aware of the difference between what it was charged for cable television service from 1968 to 1974 and what hotels and motels in Vail were charged during the same period. Although it made written and verbal protests to both the Town of Vail and C.T.I. during the year 1971 and until the ordinance was repealed in 1974, and on at least two occasions requested that Vail arbitrate the issue, Manor Vail voluntarily withdrew both arbitration requests. It never refused to pay the higher charges and it accepted the benefits of the cable TV service from C.T.I. Manor Vail waited until after the 1974 ordinance had been enacted to seek judicial relief from the rate classification under the 1968 ordinance.

The doctrine of estoppel by reason of delay or laches involves not merely delay in seeking relief, but delay that is prejudicial to an adverse party. *See* J. Pomeroy, 2 *Equity Jurisprudence* § 419 (5th ed. S. Symons 1941) and 27 Am. Jur. 2d *Equity* § 153 (1966). The elements have been clearly stated in *Herald Company v. Seawell,* 472 F.2d 1081 (10th Cir. 1972): "(1) full knowledge of the facts; (2) unreasonable delay in the assertion of available remedy; and (3) intervening reliance by and prejudice to another." *See Western Motors v. Carlson,* 138 Colo. 404, 335 P.2d 272 (1959).

Implicit in the court's application of the doctrine of estoppel was the prejudice to C.T.I. as demonstrated by the evidence. The executive vice president of C.T.I. testified that, in providing cable television service to a community, the cable television company must first ensure that service to the area would be economically viable. A main consideration is the rate structure for charges to its customers. A significant reduction in the rate charged Manor Vail under the 1968 ordinance would have resulted either in the company's seeking increased rates for the entire community or in withdrawing cable service entirely from the Vail area as not economically feasible. Manor Vail presented no evidence to dispute this assertion.

By waiting to bring this action until 1974, after the 1968 ordinance had been repealed, Manor Vail effectively prevented C.T.I. from protecting its investment for that period. Should Manor Vail now be allowed to

prevail in its attempt to prove it was misclassified from 1968 to 1974, C.T.I. would have no means of revising its rates to other customers for that period to protect against the resulting economic injury. We therefore affirm the district court's dismissal of the first claim for relief.

## II.

The district court also dismissed Manor Vail's constitutional challenge to the 1974 franchise ordinance, which revised certain provisions of the cable television franchise, including the customer categories and rate structure. Manor Vail argues that the ordinance authorized C.T.I. to charge disparate rates to various citizens for the same cable television service and, in effect, denied it equal protection of the laws. It contends that the rate classifications are not rationally related to a legitimate state interest and the ordinance must, therefore, be declared unconstitutional.

The 1974 ordinance established three customer categories: dwelling units; accommodation units; and business establishments. A dwelling unit is defined by the ordinance as "any room or group of rooms having kitchen facilities which is designed for use as a dwelling . . . ." An accommodation unit is "any room or group of rooms without kitchen facilities which is designed for occupancy by patrons, guests, or transients and is accessible from common corridors, walks or balconies without passing through another accommodation unit or dwelling unit." C.T.I. placed Manor Vail in the "dwelling units" category, which classification imposed substantially higher rates than the "accommodation units" category.[1]

---

[1] Under the 1974 ordinance, the service charges effective November 1, 1974, were as follows:

|  | Monthly Rates For Each TV Outlet Full Year |
|---|---|
| 1. Each dwelling unit; | $7.50 |
| Each additional outlet within the dwelling unit | 1.50 |
| 2. Each dwelling unit in one building billed on one account (minimum of 10 units) | |
| Units | |
| 10 - 20 | 7.25 |
| 21 - 30 | 7.00 |
| 31 - 50 | 6.75 |
| 51 or more | 6.50 |
| 3. Each accommodation unit in one building billed on one account | |
| Units | |
| 1 - 9 | 4.00 |
| 10 - 20 | 3.50 |
| 21 - 30 | 3.00 |
| 31 - 50 | 2.50 |
| 51 or more | 2.00 |
| 4. Each outlet in an accommodation unit attached to a dwelling unit receiving service | 1.50 |

According to the complaint of Manor Vail, it had approximately two hundred six television outlets connected to the C.T.I. system. For each dwelling unit outlet, the rate applied was $6.50 per month. For each additional outlet within the dwelling unit, the rate applied was $1.50 per month.

■ We first note that we are not concerned with a suspect class, nor a fundamental interest. *See Harding v. Indust. Comm.,* 183 Colo. 52, 515 P.2d 95 (1973). We need not, therefore, apply a strict scrutiny test in determining whether the 1974 ordinance is constitutional. It is only necessary to determine if the distinctions made by the ordinance have a reasonable basis and are rationally related to a legitimate state interest. *Jeffrey v. Colo. S. Dept. of Soc. Serv.,* 198 Colo. 265, 599 P.2d 874 (1979).

■ The United States Supreme Court has recognized that local governments are to be "accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with less than mathematical exactitude." *New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). Only where there is "the invidious discrimination, the wholly arbitrary act," will such legislation be found to violate the Fourteenth Amendment. *New Orleans v. Dukes, supra.*

■ The fundamental standard under the Equal Protection Clause of the Fourteenth Amendment in the area of state regulation of business or industry is stated in *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1969), as follows:

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations — illogical, it may be, and unscientific.' *Metropolis Theatre Co. v. City of Chicago,* 228 U.S. 61, 69-70. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' *McGowan v. Maryland,* 366 U.S. 420, 426."

The Town Council of Vail devoted a year to studying and negotiating the rate schedule which it adopted in 1974. Comments and information were received from citizens and customers of C.T.I., as well as from C.T.I. and the town planners and managers. Vail sought to achieve a schedule

which would provide adequate revenues to the cable television company while at the same time equitably apportioning the rates among users of the service.

We cannot conclude, from the evidence adduced at trial, that the Vail cable television rate schedule is "wholly arbitrary" or represents "invidious discrimination" against Manor Vail. Vail determined that the presence of kitchen facilities in rental units might cause the guests who occupy the dwelling units to stay in their rooms more frequently and to use the televisions more often than would guests in accommodation units without kitchen facilities. There was evidence in the record to support this rationale.[2]

Manor Vail has not demonstrated that the classification did not have *some reasonable basis*. It simply contends that a better and more equitable rate structure could have been adopted. This, however, affords no constitutional ground for declaring the ordinance invalid. Though we might disagree with the wisdom of the ordinance, the function of the court is not to substitute its opinion for the judgment of the legislative body, as expressed in the ordinance enacted.

Since Manor Vail was unable to overcome the presumption of constitutionality, we affirm the district court's conclusion that the 1974 Vail ordinance is constitutional.

### III.

Finally, Manor Vail contends the judgment must be reversed because the trial judge failed to sufficiently comply with C.R.C.P. 52, which

---

[2] The executive vice president of Community Tele-Communications, Inc. (parent company of C.T.I.) testified that, according to industry-wide standards, greater use of televisions results in more service calls. Industry information indicates that units with kitchen facilities are more often utilized by families, who stay in the unit for more hours per day and use the television more hours per day, as compared with accommodation units which are seldom utilized by entire families and serve what is generally a more transient population.

The Town of Vail official primarily responsible for drafting the 1974 ordinance also testified that, since the average size of an accommodation unit is approximately half that of a dwelling unit, the cost of servicing the equipment in dwelling units is greater.

Although this testimony was disputed at trial, the evidence presented to the district court was sufficient to support that court's finding that the Town of Vail had a rational basis for its rate schedule.

requires that, in all actions tried by the court without a jury, the court shall find the facts specially and state separately its conclusions of law, and enter judgment accordingly.

The brevity of findings and conclusions alone does not necessarily determine their validity. There is sufficient compliance with the rule if the ultimate facts have been determined and conclusions of law are entered thereon. Here, although they are brief and sparse in detail, we are able to determine from the findings and conclusions the basis of the court's judgment for the purposes of review, and hold them to be sufficient.

The judgment is affirmed.

JUSTICE LOHR does not participate.