CONSOLIDATED HOME SUPPLY DITCH AND RESERVOIR COMPANY, Objector–Appellant/Cross–Appellee,

v.

TOWN OF BERTHOUD, Applicant–Appellee/Cross–Appellant,

and

Public Service Company of Colorado; City of Loveland; the Thompson Water Users Association; Harold D. Simpson, State Engineer; Alan D. Berryman, Division Engineer for Water Division No. 1; Town of Estes Park, and Handy Ditch Company, Objectors–Appellees.

No. 93SA307.

Supreme Court of Colorado, En Banc.

May 8, 1995.

The Law Office of Stephen T. Williamson, Stephen T. Williamson, Louisville, for objector-appellant/cross-appellee Consol. Home Supply Ditch and Reservoir Co.

Vranesh and Raisch, L.L.C., John R. Henderson, Paul J. Zilis, Boulder, for applicant-appellee/cross-appellant Town of Berthoud.

Kutak Rock, Timothy J. Flanagan, William S. Martin, Denver, for objector-appellee Public Service Co. of Colorado.

Fischer, Brown, Huddleson & Gunn, P.C., William H. Brown, Fort Collins, for objector-appellee Thompson Water Users Ass'n.

Justice MULLARKEY delivered the Opinion of the Court.

The Town of Berthoud (Berthoud) filed an application in the water court to change the

use of two of its water rights on the Big Thompson River, one in the amount of 3.0 cubic feet per second (c.f.s.) and the other in the amount of 4.14 c.f.s. Berthoud has historically diverted these rights through the Handy Ditch during irrigation months. In its application, Berthoud sought to obtain authorization to divert the rights through the Colorado Big Thompson Project Facilities on a year-round basis.

The water court held a four-day trial on Berthoud's change of use application during which two of the opposing water rights holders, Home Supply Ditch and Reservoir Company (Home Supply) and Thompson Water Users Association, submitted evidence to demonstrate that Berthoud had abandoned its right to divert the 3.0 c.f.s. claim during the non-irrigation months (3.0 c.f.s. winter water right). Home Supply also challenged the priority of Berthoud's water right.

Following the trial, the water court found that Berthoud had abandoned its 3.0 c.f.s. winter water right. The court held that Berthoud could divert its 3.0 c.f.s. right during irrigation months and its 4.14 c.f.s. water right via the Handy Ditch through the Colorado Big Thompson Project Facilities. The court also held that Berthoud had a first priority right for all uses.

Home Supply appeals to this court for review of the water court's holding that Berthoud has the first priority right for all uses.[1] It argues that the water court incorrectly determined Berthoud's priority date with respect to future administration of the water right and contends that its water right is senior to Berthoud's water right. Berthoud appeals the water court's holding on abandonment, asserting that it did not abandon its 3.0 c.f.s. winter water right. We affirm the water court's holding recognizing Berthoud's right as senior to all others and reverse the water court's finding of abandonment.

## I.

This case involves the complicated adjudications of Big Thompson River water rights

in Water Division No. 4 during the late 1800's and early 1900's. In 1879 and 1881, adjudication acts were passed which provided for adjudication of water rights only when the rights were for irrigation purposes. *See* 1879 Colo.Sess.Laws 94; 1881 Colo.Sess. Laws 142. Pursuant to these acts, the Boulder District Court entered decrees on May 28, 1883, and on March 22, 1890. All water rights adjudicated in both the 1883 and 1890 general adjudication proceedings were for irrigation purposes and established the irrigation priorities for all water rights users in the Big Thompson system.

The statute authorizing the adjudication of water rights for purposes other than irrigation did not become effective until July 11, 1903. *See* 1903 Colo.Sess.Laws 297; *Mills Stat.Ann.,* §§ 3803–06; *Doll v. McEllen,* 21 Colo.App. 7, 121 P. 149 (1912). Decrees concerning domestic uses of Big Thompson River water were entered in 1912 and 1923. After court challenges, a final decree was entered on June 29, 1916 (1916 decree), and it remains in effect today. The 1916 decree granted Berthoud "the perpetual right to take from the Big Thompson River three (3) cubic feet of water per second of time, as priority No. 1, for domestic purposes as against all the users of water from said river." The decree also required Berthoud to build a pipeline by 1920 to carry its water from the Big Thompson River. In the interim, Berthoud was awarded 6.0 c.f.s. of "carrying" water to transport the water through the Handy Ditch.

The jurisdiction of the water court to enter what became the 1916 decree was initially challenged by several objectors in *Louden Irrigating Canal and Reservoir Co. v. Berthoud,* 57 Colo. 374, 140 P. 802 (1914). The opinion quotes the objectors at length and demonstrates that the parties understood that the 1916 decree gave Berthoud the first priority right for all purposes. *Id.* at 376, 140 P. at 803 (objectors asserted that the water court did not have jurisdiction "to make such a decree antedating all priorities

---

**1.** Other objectors appear in this court as appellees with respect to the abandonment issue.

Only Home Supply has appealed the priority issue.

from the Big Thompson River").[2]  This court rejected the objectors' challenge to the jurisdiction of the water court and held that the objectors had not properly preserved their argument that the water court mistakenly interpreted the law as requiring that domestic use always be given a higher priority than irrigation use.  *Id.* at 380, 140 P. at 804.[3]

The decree was again before us in *Hinderlider v. Town of Berthoud,* 77 Colo. 504, 238 P. 64 (1925), and both Home Supply and Berthoud were parties.  This time, Berthoud contested the validity of the decree, arguing that the water court lacked the authority to decree any temporary amount of water or to fix any penalty or forfeiture for Berthoud's failure to build a pipeline.  This court found against Berthoud and upheld the validity of the decree.  In so doing, Berthoud retained its 3.0 c.f.s. right but lost its 6.0 c.f.s. right to "carrying" water.

Home Supply also challenged the decree in an administrative hearing before the Office of the State Engineer, *Town of Berthoud v. The Consolidated Home Supply Ditch and Reservoir Co.,* (State Eng. of Colo. 1944) (1944 state engineer's decision).  In the hearing, Home Supply contended, similar to its position in the present case, that since Berthoud's water right was granted after the irrigation rights had been adjudicated, Berthoud's right was junior to the irrigation rights.  The Office of the State Engineer found that Berthoud's water right had been administered as the number one water right for all uses on the stream since 1916 and stated that Home Supply's request was more capable of being rectified by a proper court action.  Apparently, Home Supply filed no court action and, since the 1944 State Engineer's decision, the state engineer has continued to administer Berthoud's water right as the number one water right on the river.

## II.

In finding that Berthoud had the number one priority right, the water court held:

6.  The evidence was undisputed that the above referenced water right decreed in Case No. 4862 for 3.0 cfs has been diverted as the No. 1 Priority water right on the Big Thompson River since it was decreed, and has never been curtailed.  In addition, the Decree in Case No. 4862, dated June 29, 1916, the supporting Record, the Supreme Court decisions in *Louden Irrigating Canal and Reservoir Co. v. Berthoud,* 57 Colo. 374, 140 P. 802 (1914) and *Hinderlider v. Town of Berthoud,* 77 Colo. 504, 238 P. 64 (1925), and the State Engineer's decision in 1944, *In the Matter of the Town of Berthoud v., the Consolidated Home Supply Ditch and Reservoir Ditch Co.,* (Exhibit A–19), all provide that said water right is entitled to divert water from the Big Thompson River as the No. 1 priority.

The Court finds any ambiguity in the Decree is hereby resolved such that Berthoud is entitled to divert its 3.0 cfs water right from the Big Thompson River as the No. 1 Priority based upon the following: (1) the specific language of the 1916 Decree related to the Berthoud System of Water Works supersedes the general language of the Decree; (2) this conclusion is fully supported by the Record from the 1904 adjudication (leading to the entry of the 1916 decree), wherein Berthoud stipulated with the other parties to the adjudication to receive a 3.0 cfs No. 1 right in exchange for dismissing its pending transfer of 9 cfs of the No. 1 irrigation right to the Town; (3) such conclusion is further supported by the consistent administrative practice during this century (at a minimum) of administering Berthoud's 3.0 cfs domestic right as the No. 1 right on the Big Thompson River.

---

2.  Some of the parties in the *Louden* case are the same as the parties in the present case.

3.  We held that:
    [N]o tangible questions in this regard were presented for the consideration of the trial court.... Counsel contend that the referee and the court seem to have proceeded on the theory that appropriations of water for domestic purposes made at any period takes precedence over all appropriations for other purposes, and assert that this is not the law.  If so, it was the duty of appellants to have raised the question before judgment was rendered, and they cannot be permitted to do so afterward. *Berthoud,* 57 Colo. at 378, 140 P. at 804.

This right has always been administered as being senior to the No. 1 irrigation right which has a priority date of November 10, 1861, a portion of which Applicant itself owns. This historic administrative practice shall continue.

Home Supply contends that the water court incorrectly held that the 1916 decree granted Berthoud the number one priority for all uses on the Big Thompson River. Under Home Supply's analysis, the 1916 decree was adjudicated to give Berthoud the number one priority in the water district for domestic purposes only. As such, Home Supply contends that the water court erroneously found that Berthoud's water right was senior to the number one irrigation right which has an appropriation date of November 10, 1861, and was adjudicated on May 28, 1881. We disagree for several reasons.

■ First, Home Supply's claim is precluded by res judicata. The doctrine of res judicata holds that an existing judgment is conclusive of the rights of the parties in any subsequent suit on the same claim. *State Engineer v. Smith Cattle, Inc.,* 780 P.2d 546, 549 (Colo.1989); *Pomeroy v. Waitkus,* 183 Colo. 344, 350, 517 P.2d 396, 399 (1974). Res judicata constitutes an absolute bar to subsequent actions only when both the prior and subsequent suits have "identity of subject matter, identity of cause of action, and identity of capacity in the persons for which or against whom the claim is made." *Smith Cattle, Inc.,* 780 P.2d at 549; *City of Westminster v. Church,* 167 Colo. 1, 9, 445 P.2d 52, 55 (1968). When applicable, res judicata bars the later assertion of any claim which could have been raised in the earlier proceeding even if it was not actually raised. *Smith Cattle,* 780 P.2d at 549.

The primary issue of dispute is the interpretation of the 1916 decree granting Berthoud a 3.0 c.f.s. water right from the Big Thompson River. The relevant provision in the decree stated:

... the town of Berthoud shall have the perpetual right to take from the Big Thompson River three (3) cubic feet of water per second of time, as priority No. 1, for domestic purposes as against all the users of water from said river, except as against the city of Loveland, which city shall have equal priority with said town of Berthoud at all times for domestic purposes. . . .

Berthoud and Home Supply were parties to a 1909 stipulation which was incorporated into the disputed language of the decree. In at least one case, *Hinderlider,* both Berthoud and Home Supply were parties to a case involving the validity and interpretation of the 1916 decree. Although Berthoud was the party contesting the validity of the decree, Home Supply had the opportunity to challenge the priority of Berthoud's water right under the decree. It did not raise the issue, however, and is now precluded from challenging Berthoud's first priority water right under the 1916 decree.

■ Home Supply also is barred from attacking this decree by the doctrine of laches. Laches requires actual knowledge of existing conditions, unreasonable delay in the assertion of a claim, and intervening reliance by and prejudice to another. *Manor Vail Condominium Ass'n v. Town of Vail,* 199 Colo. 62, 604 P.2d 1168 (1980). In *Louden,* we rejected the objectors' challenge to the decree because the objectors had actual or constructive knowledge of the 1909 stipulation for several years before the decree was entered. *Louden,* 57 Colo. at 380, 140 P. at 804. Home Supply, as one of the parties to the stipulation, would be barred by the same reasoning.

Further, the 1944 letter from the State Engineer included language specifically advising Home Supply to seek court redress if it so desired. Since Home Supply was a party to the action before the state engineer, it was aware of the conditions surrounding the water right and its administration. Yet it chose to wait nearly 40 years before raising the issue in court. Berthoud has relied on the priority of its water right and has had no reason to pursue any alternative means of insuring its right to take water first before all other users. Thus, laches prevents Home Supply from raising this claim.

■ In an effort to avoid the bar of res judicata or laches, Home Supply argues that

the state engineer did not recognize Berthoud's right as the first priority water right. In support, Home Supply cites a decision from the division engineer dated September 15, 1944. The division engineer stated that Berthoud's right was junior to those rights adjudicated in 1881 and 1890. Specifically, the division engineer determined that Berthoud's right was junior to Home Supply's irrigation right. However, this letter was the basis of the appeal to the state engineer who, in turn, issued the November 30, 1944, state engineer's decision that Berthoud's water right should continue to be administered as the number one priority right. Home Supply's reliance on the division engineer's opinion has no merit.

Home Supply also argues that the state engineer has treated Berthoud's right as the junior right in the state's quadrennial tabulation. The statute requiring water tabulations from the state engineer specifically provides that those tabulations do not create any presumption on the priority of a water right. § 37–92–401(11), 15 C.R.S. (1990).[4] Thus, we find that the state engineer has consistently applied Berthoud's right as the first priority right despite the quadrennial water tabulations.

▉▉▉ Finally, we find the interpretation of the decree by the state engineer consistent and persuasive. Assuming the meaning of a decree is ambiguous, the court may look to' the administrative interpretation of the decree by officials charged with the administra-tion of that decree. *South Adams County v. Broe Land Co.*, 812 P.2d 1161, 1168 (Colo. 1991). While an opinion letter from an administrative agency is not binding authority, it can be used as persuasive authority. *Banner Advertising v. People*, 868 P.2d 1077 (Colo.1994).

The state engineer has administered the subject water right as the number one priority water right at least since the 1944 state engineer's decision. In fact, the decision recognized Berthoud's date of priority as November 10, 1861, and as number one for all uses.[5] This determination was neither appealed nor challenged in court until the present case, and the state engineer has continued administering Berthoud's water right as the number one water right.

For the foregoing reasons, we hold that Berthoud has the first priority right for all uses under the 1916 decree.

## III.

The next issue we address is whether the water court properly concluded that Berthoud abandoned its 3.0 c.f.s. winter water right to the Big Thompson River. The water court limited Berthoud's future diversions under the 3.0 c.f.s. right to the period from April 27 through October 31 of each year, not to exceed 159 days per year. The relevant portions of the written order read as follows:

18. The decree in Case No. 4862 recognized Applicant's right to divert its 3.0 cfs

---

4. The statute provides, in relevant part, that "the relative listing of water rights in a tabulation shall not create any presumption of seniority." § 37–92–401(11).

5. The state engineer recognized that Berthoud's water right was adjudicated after the irrigation rights adjudicated in 1881 and 1890 and determined:

Also that the other priorities award in early adjudications for irrigation uses, were numbered consecutively, while the Town's domestic priority No. 1 does not enter into that list of decrees and, consequently, was considered by the Court to be a separate decree, independent of other decrees; that the general rule that a domestic priority can not be placed ahead of priorities awarded for irrigation uses, does not apply to this particular case because of the proceedings leading up to the decree and of the terms of the aforementioned stipulation.

State engineer's holding at p. 7. Thus, the state engineer held that despite the antedating problem, Berthoud's water right was still the first priority right. The state engineer also recognized that:

... failure on the part of any interested appropriator for 28 years to oppose the present method of administration of the water rights of the Big Thompson river since the decree of June 29, 1916, was entered, is conclusive evidence that those who participated in the proceedings intended that the 3 second feet should be a prior right on the river and that this was the intent of the Referee and of the Court when the decree was entered and that, as a result of said long period of years of administration without serious objection on the part of other interested parties, this condition should not at this time be changed. . . .

water right on a year round basis upon construction of a pipeline. However, based on the evidence presented, this Court holds that Applicant has abandoned the right to divert water in the non-irrigation season.

\*      \*      \*      \*      \*      \*

24. The Change of Water Rights proposed by Applicant is one contemplated by law, and if administered in accordance with this Decree, will not adversely affect any vested water in the South Platte River or its tributaries. C.R.S. § 37–92–305(3). Self-serving statements of intent by the owner of the water rights are insufficient by themselves to rebut a presumption of abandonment. *Knapp v. Colo. River Water Conservation District*, 131 Colo. 42, 279 P.2d 420 (1955).

25. Proceedings for a change of water right subject such right to judicial scrutiny, and it is appropriate for the Court to consider abandonment. See, § 37–92–301(5), C.R.S. Abandonment of a priority is a matter that properly may be litigated in a change case. *Flasche v. Westcolo Co.*, 112 Colo. 387, 149 P.2d 817 (1944).

26. An unreasonably lengthy period of nonuse is sufficient to create a presumption of the owner's intent to abandon a water right. This requires the owner to produce some evidence supporting an assertion that the owner did not intend to abandon the water right. *Water Rights of Masters Inv. Co., Inc. v. Irrigationists Ass'n*, 702 P.2d 268 (Colo.1985).

In its oral ruling, the water court stated in relevant part:

[I]t appears to me that the portion of the decree in the 1916 case which provided under certain conditions for a wintertime use of the 3 cfs water has been abandoned. And long since, too.

I'm inclined to think that it was the contemplation of the original decree that that right would expire in 1920 along with the extra 6 cfs.

But, even if that is not the case, it's been clear that there is no effort to do it, and witnesses testified here today that the

Town has come to the conclusion that it was impractical to build the pipeline.

And I consider that to have been a condition precedent to the right to the wintertime storage. I think that the Town has long since abandoned any intention to ever build that pipeline.

I think it has no such intention today, and I think the only thing they didn't abandon was the hope that some way they could figure out how to get that water without building the pipeline, but I don't think they can do that.

So I am going to find that that decree, insofar as providing for winter use of that 3 cfs, has been abandoned.

■■■ This court consistently has held that two elements are necessary to prove abandonment—intent and nonuse. *Water Rights of Masters Inv. Co. Inc. v. Irrigationists Ass'n*, 702 P.2d 268 (1985). Abandonment of a water right must be established by a preponderance of the evidence. *People v. City of Thornton*, 775 P.2d 11, 19 (Colo.1989). The requisite intent to abandon need not be proved directly but may be inferred from all the circumstances in the case. *Southeastern Colorado Water Conservancy Dist. v. Twin Lakes Assoc., Inc.*, 770 P.2d 1231 (Colo.1989). Continued and unexplained nonuse of a water right for a long period of time creates a rebuttable presumption of intent to abandon. *Thornton*, 775 P.2d at 18. By statute, this period is ten years. § 37–92–402(11), 15 C.R.S. (1990).

■■■ A presumption of abandonment may be rebutted by evidence of justifiable excuse for nonuse. *Twin Lakes Assoc.*, 770 P.2d at 1231. Evidence that during the period of nonuse the owner never intended to discontinue the use of the water available will rebut the presumption of abandonment. *Thornton*, 775 P.2d at 18. Evidence of economic, financial or legal obstacles to water use may justify nonuse. *Hallenbeck v. Granby Ditch & Reservoir Co.*, 160 Colo. 555, 420 P.2d 419 (1966). Such evidence, however, must consist of more than mere subjective declarations of the owner of the water right that it did not intend to abandon the right or that it intended to resume use of the right at

some future time. *Twin Lakes Assoc.,* 770 P.2d at 1238.[6]

The question of abandonment is a factual question to be determined by weighing all of the evidence and assessing the credibility of the witnesses. *Masters Inv. Co.,* 702 P.2d at 272. The water court is uniquely suited to make these determinations. *City and County of Denver v. Snake River Water Dist.,* 788 P.2d 772, 776 (Colo. 1990). Findings of the water court should not be disturbed unless the evidence is "wholly insufficient" to support the decision. *Thornton,* 775 P.2d at 19.

Our review of the water court's written and oral rulings convinces us that the court's conclusion of abandonment was based on a faulty legal premise which we now reject. The water court erroneously equated Berthoud's failure to build a pipeline with abandonment of its winter water right. In paragraph 18 of its written ruling, the water court characterized the 1916 decree as authorizing Berthoud to divert 3.0 c.f.s. "on a year round basis *upon construction of a pipeline.*" (emphasis added). In the water court's oral ruling, it elaborated on its reasoning and stated that it considered the building of a pipeline to be a "condition precedent" to Berthoud's winter water right. The water court recognized that Berthoud did not abandon its efforts to use the winter water without constructing a pipeline. Indeed, Berthoud initiated this action for a change in point of diversion because it had found an alternative way to transport the water. However, the water court found that Berthoud had no intention to build a pipeline as of the time of trial and that, without building the pipeline, Berthoud could not "get that water." We reject the water court's "condition precedent" analysis.

The effect of Berthoud's failure to construct a pipeline according to the terms of the 1916 decree was adjudicated in the 1925 *Hinderlider* case. There, we concluded that the only consequence of that failure was that Berthoud lost its additional 6.0 c.f.s. "carrying" water. We stated:

> This decree, therefore, rightly interpreted, means that the diversion of the priority awarded might be temporarily made and continued through the Handy ditch until January 1, 1920, but that after such time the town must construct a pipe line from the river to its reservoirs, and for its failure to do so it must be restricted to the minimum amount of 3 cubic feet of water per second of time if it continues to use the Handy ditch as a carrier.

*Hinderlider,* 77 Colo. at 515, 238 P. at 68. Contrary to the water court's ruling in this case, construction of the pipeline is not a "condition precedent" to Berthoud's exercise of its winter water right. Under *Hinderlider,* Berthoud's 3.0 c.f.s. water right is unaffected by the fact that Berthoud has not constructed a pipeline. Thus, the water court's conclusion that Berthoud could not retain its winter water right without building a pipeline is incorrect as a matter of law.

Given its erroneous construction of the 1916 decree, the water court apparently considered it unnecessary to make findings of fact on abandonment and it made no such findings. The critical issue in this case is whether Berthoud rebutted the presumption of abandonment raised by nonuse. The record contains various pieces of evidence which bear on Berthoud's intent concerning its water right, including documents and oral and written testimony by several witnesses. There has been no determination of credibility and no weighing of the evidence. Given this state of the record, this court cannot perform its appellate review function. Thus, we must remand this case to the water court for it to determine whether Berthoud intended to use the winter water despite its long period of nonuse.

The judgment of the water court is affirmed in part and reversed in part, and the

---

6. We reject Berthoud's claim that it cannot abandon its water right because of its status as a municipality. *See, e.g., City and County of Denver v. Snake River Water Dist.,* 788 P.2d 772 (Colo. 1990) (finding abandonment of a hydroelectric water right when Denver provided no justification for nonuse of a water right); *San Luis Valley Irrigation Dist. v. Alamosa,* 55 Colo. 386, 135 P. 769 (1913) (holding that a municipal corporation abandoned a water right after an extended period of nonuse).

case is remanded to the water court with directions to make factual findings and conclusions of law on the issue of abandonment. The proceedings on remand may include reopening the evidentiary phase of the case if deemed necessary and appropriate by the water court.

LOHR, J., concurs in part and dissents in part.

ERICKSON and SCOTT, JJ., join in the concurrence and dissent.

Justice LOHR concurring in part and dissenting in part:

The majority affirms the water court's holding recognizing Berthoud's 3 c.f.s. water right as senior to all others on the Big Thompson River and reverses the water court's determination that Berthoud partially abandoned its 3 c.f.s. water right and remands for additional findings on abandonment. Maj. op. at 262, 267. I agree with the majority that the water court correctly determined that Berthoud's 3 c.f.s. water right for domestic purposes is the first priority water right with respect to all uses. I disagree, however, with the majority's conclusion that the water court employed a faulty legal premise in determining that Berthoud abandoned its right to divert water under its 3 c.f.s. water right during non-irrigation months. *See* maj. op. at 267. I also disagree with the majority's conclusion that "the water court apparently considered it unnecessary to make findings of fact on abandonment and it made no such findings." Maj. op. at 267. Moreover, I would hold that the record supports the water court's determination that Berthoud partially abandoned its 3 c.f.s. water right. Therefore, I see no need for remand and would affirm the water court's finding of partial abandonment. Accordingly, I concur in Part II of the majority opinion and respectfully dissent from Part III of that opinion.

7. For example, Berthoud's population totaled 811 people in both the 1930 and 1940 United States census.

I.

I agree generally with the factual background set out in the majority opinion. I elaborate, however, on the evidence that is relevant to the abandonment issue.

During the four-day trial on Berthoud's application for alternate points of diversion, the Mayor of Berthoud, Richard Strachan, testified that the pipeline contemplated by the 1916 water right decree for transportation of water from Berthoud's decreed point of diversion to its place of storage—a distance of about thirteen miles—was never constructed and that Berthoud had no concrete plans to build the pipeline. Mayor Strachan further testified that general engineering studies of Berthoud's water situation were undertaken in the 1960s and 1970s, but no other specific actions were taken by Berthoud to develop the pipeline. According to Mayor Strachan and other witnesses, the population growth of Berthoud remained stagnant from 1910 to 1960,[7] thus Berthoud did not need the water during that time. Berthoud's population increased dramatically from 1960 to 1990. As Berthoud's population increased so did its demand for water, thereby putting pressure on the town's water supply during non-irrigation months. In 1960 and 1967, engineering studies of Berthoud's water system were conducted but they did not specifically address the pipeline. An engineering study conducted in 1973 considered the pipeline as an alternative for obtaining an adequate water supply and estimated the cost at $1,687,500. Another such study in 1979 also considered the pipeline alternative and included a cost estimate of $2,981,000 for constructing such a pipeline.[8] The latter report did not specifically recommend any of the several alternatives considered but assigned the highest priority to pursuing a change in the point of diversion of Berthoud's existing direct flow rights rather than constructing the pipeline. Mayor Strachan testified that Berthoud did nothing further with regard to the pipeline after 1979.

8. According to the 1979 engineering report, the pipeline would be 71,850 feet—more than thirteen miles—in length.

Mayor Strachan, as well as other witnesses, testified that it has not been economically feasible for Berthoud to construct the pipeline necessary to divert its 3 c.f.s. water right during non-irrigation months. Another witness for Berthoud testified that the pipeline had been "researched, discussed and basically eliminated as an economically unfeasible solution to this thing." The evidence indicated that Berthoud brought the present action for alternate points of diversion because it had concluded that constructing the pipeline was not economically feasible, it was not possible to transport any of its water during non-irrigation months in the Handy Ditch due to seepage and evaporation, and no other method existed for transporting the water to Berthoud.

Upon hearing the evidence presented, the water court made a brief ruling from the bench that was followed by written Findings of Fact, Conclusions of Law and Decree of the Water Court, dated October 6, 1993. In its oral findings, the water court stated that "it appears to me that the portion of the decree in the 1916 case which provided under certain conditions for a wintertime use of the 3 cfs water has been abandoned. *And long since, too.*" (Emphasis added). Berthoud now cross-appeals the water court's determination that Berthoud partially abandoned its 3 c.f.s. water right.

## II.

I agree with the majority that abandonment requires a concurrence of nonuse and the intent to abandon. § 37–92–103(2), 15 C.R.S. (1990) (defining "abandonment of a water right" as "the termination of a water right in whole or in part as a result of the intent of the owner thereof to discontinue permanently the use of all or part of the water available thereunder."); *People v. City of Thornton,* 775 P.2d 11, 17 (Colo.1989);

Southeastern Colorado Water Conservancy Dist. v. Twin Lakes Associates, Inc., 770 P.2d 1231, 1237 (Colo.1989); *Beaver Park Water, Inc. v. City of Victor,* 649 P.2d 300, 302 (Colo.1982); *Farmers Reservoir & Irrigation Co. v. Fulton Irrigating Ditch Co.,* 108 Colo. 482, 487, 120 P.2d 196, 199 (1941). Continued and unexplained nonuse of a water right for an unreasonable period of time establishes a rebuttable presumption of intent to abandon. *E.g., City and County of Denver v. Snake River Water Dist.,* 788 P.2d 772, 776 (Colo.1990); *City of Thornton,* 775 P.2d at 18.[9] The presumption of abandonment shifts the burden of going forward to the water right owner to produce evidence that the water right owner did not intend to abandon the water right notwithstanding the long period of nonuse that gave rise to the presumption. *Snake River Water Dist.,* 788 P.2d at 776; *City of Thornton,* 775 P.2d at 18. We have recognized that the presumption of abandonment may be rebutted by evidence of a justifiable excuse for the nonuse, "but acceptable justifications for an unreasonable period of nonuse are extremely limited." *Twin Lakes,* 770 P.2d at 1238.

Abandonment of a water right must be established by a preponderance of the evidence. *Snake River Water Dist.,* 788 P.2d at 776; *City of Thornton,* 775 P.2d at 19. Resolution of the issue of abandonment often involves conflicting evidence of nonuse and intent. " 'Because abandonment is a question of fact depending on the particular circumstances of each case, the water court's resolution of the factual issues presented will not be disturbed on appeal unless the evidence is wholly insufficient to support the decision.' " *Snake River Water Dist.,* 788 P.2d at 776 (quoting *City of Thornton,* 775 P.2d at 19). An appellate court reviewing a trial court's factual determination, such as a water court's finding of abandonment, is obligated to search the record for evidence supporting

---

9. Depending on the circumstances of the case, we have held that various periods of nonuse have been unreasonable, thereby creating a presumption of abandonment. *See, e.g., Beaver Park,* 649 P.2d at 302 (twenty years of nonuse established prima facie case of abandonment); *CF & I Steel Corp. v. Purgatoire River Water Conservancy Dist.,* 183 Colo. 135, 139, 515 P.2d 456, 458 (1973) (fifty-four years of nonuse was unreasonable);

*Farmers,* 108 Colo. at 496, 120 P.2d at 203 (forty years of nonuse was unreasonable); *see also* § 37–92–402(1), (11), 15 C.R.S. (1990) (failing to apply water available under a water right to a beneficial use for a period of ten years creates a rebuttable presumption of abandonment for purposes of the division engineer and the state engineer in preparing the 1978 tabulation and abandonment list).

the trial court's determination. *See Simpson v. Yale Investments, Inc.,* 886 P.2d 689, 698 (Colo.1994) (concerning issue of injurious effect in considering plan for augmentation); *Peterson v. Ground Water Comm'n,* 195 Colo. 508, 516, 579 P.2d 629, 635 (1978) (concerning issue of availability of water in considering application to appropriate designated ground water).

### III.

Applying the foregoing principles to the facts of the present case, I conclude that the water court applied the correct legal standard and made adequate findings of fact, and that the record supports the water court's determination that Berthoud abandoned the use of its 3 c.f.s. water right during the period from November 1 to April 26 of each year. Accordingly, I would affirm the water court's finding of partial abandonment and thus respectfully dissent from Part III of the majority's opinion.

The majority first states that the water court's finding of abandonment was based on a faulty legal premise. Maj. op. at 267. Specifically, the majority concludes that "[t]he water court erroneously equated Berthoud's failure to build a pipeline with abandonment of its winter water right." Maj. op. at 267. I disagree with the majority's analysis.

The water court, in its written decree, clearly set out the correct legal standard for determining whether a water right has been abandoned.[10] The water court's oral reference to building the pipeline as a "condition precedent" to the winter water right, upon which the majority heavily relies to support its conclusion, is better understood in the context of the water court's oral findings, which preceded its written decree. The evidence indicated court found that the only way for Berthoud to obtain water by exercise of its 3 c.f.s. water right during the winter months was to build the pipeline. This was true because of the seepage and evaporation loss in transporting water approximately thirteen miles in the unlined Handy Ditch. Thus, in considering the evidence presented to the water court—including the fact that Berthoud never built the pipeline, had no plan to build the pipeline, and had no other way to divert the water—the water court applied the correct legal analysis to determine whether Berthoud rebutted the presumption of an intent to abandon that arose from *seventy-six years* of nonuse. Therefore, I would hold that the water court set out, and applied, the correct legal standard for determining whether a water right has been abandoned.[11]

The majority then concludes that "the water court apparently considered it unnecessary to make findings of fact on abandonment and it made no such findings." Maj. op. at 267. I also disagree with this conclusion. Although the water court did not set out detailed findings of fact on the abandonment issue, the water court expressly based its finding of partial abandonment on the evidence presented. As noted above, the water court found that Berthoud never built the pipeline and had no intent to build the pipeline. The evidence further indicated that Berthoud had no way to divert the water during non-irrigation months in the Handy

10. In paragraph 26 of the written decree, dated October 6, 1993, the water court stated:
    An unreasonably lengthy period of nonuse is sufficient to create a presumption of the owner's intent to abandon a water right. This requires the owner to produce some evidence supporting an assertion that the owner did not intend to abandon the water right. *Water Rights of Masters Inv. Co., Inc. v. Irrigationists Ass'n,* 702 P.2d 268 (Colo.1985).

11. The majority rejects the water court's analysis on the basis that in bringing the present action, Berthoud demonstrated that "it had found an alternative way to transport the water." Maj. op. at 15. There was ample evidence, however, that Berthoud's subsequent actions—including initiating the present lawsuit—occurred after the wintertime use of the 3 c.f.s. had already been abandoned. Such later actions cannot revive the abandoned water right. *See Parsons v. Fort Morgan Reservoir & Irrigation Co.,* 56 Colo. 146, 152, 136 P. 1024, 1026 (1913) ("From these circumstances it could be inferred that an abandonment had taken place before the attempt to use the water in 1905. If this were true then the use in 1905 would not revive rights which had been lost by abandonment."); *Farmers,* 108 Colo. at 486, 120 P.2d at 199 ("After abandonment becomes an accomplished fact, the attempt to exercise the abandoned right differs in no respect from an attempt by one who never had a right....").

Ditch due to seepage and evaporation and that no other method existed for transporting the water to Berthoud. Moreover, the issue of abandonment is itself a question of fact, *see, e.g., City of Thornton,* 775 P.2d at 19, and in finding partial abandonment, the water court necessarily considered and weighed all the evidence. Therefore, I would hold that the water court adequately set out its findings of fact on the issue of abandonment.

Finally, I would hold that the record supports the water court's finding of partial abandonment. It is indisputable that Berthoud has never put its 3 c.f.s. water right to beneficial use during non-irrigation months. The period of nonuse in the present case began as of the date of the decree, June 29, 1916, and continued up to the time of trial, which commenced in February of 1992. Thus, the period of nonuse in the present case, *seventy-six years,* creates a presumption that Berthoud intended to abandon the winter use of its 3 c.f.s. water right.

Berthoud attempts to justify its failure to put its 3 c.f.s. water right to a beneficial use during non-irrigation months on two grounds. First, Berthoud claims that it did not need the water from approximately 1910 to 1960 because its population was not increasing. Second, Berthoud claims that diverting the water, especially by building the pipeline referred to in the 1916 decree, was not economically feasible. I am not persuaded that either justification requires a finding that the presumption of abandonment has been rebutted. *See, e.g., Mason v. Hills Land & Cattle Co.,* 119 Colo. 404, 408–09, 204 P.2d 153, 156 (1949) ("[T]o rebut the presumption of abandonment arising from [a] long period of nonuse, there must be established not merely expressions of desire or hope or intent, but some fact or condition excusing such long nonuse."); *Twin Lakes,* 770 P.2d at 1238 ("Nonuse resulting from present economic difficulties, coupled with an

expectation of a more favorable economic climate for future use, will not constitute justifiable excuse.") (citing *CF & I Steel Corp. v. Purgatoire River Water Conservancy Dist.,* 183 Colo. 135, 140, 515 P.2d 456, 458 (1973)).[12] Thus, I would affirm the trial court's finding that "the portion of the decree in the 1916 case which provided under certain conditions for a wintertime use of the 3 cfs water has been abandoned. And long since, too."

### IV.

In sum, I agree with the majority's holding that the water court did not err in determining that Berthoud's 3 c.f.s. water right for domestic purposes is a first priority right on the Big Thompson River with respect to all uses. I disagree, however, with the majority's conclusion that the water court applied an erroneous legal premise in finding a partial abandonment of Berthoud's 3 c.f.s. water right. I also disagree with the majority's conclusion that the water court failed to make the necessary findings of fact on the issue of abandonment. Moreover, I would affirm the water court's finding of partial abandonment because Berthoud failed to divert water under its 3 c.f.s. water right during non-irrigation months for a period of seventy-six years, thereby creating a presumption of abandonment, and the record supports the water court's determination that Berthoud failed to rebut that presumption of abandonment. Accordingly, I concur in Part II of the majority opinion and respectfully dissent from Part III of that opinion.

ERICKSON and SCOTT, JJ., join in this concurrence and dissent.

12. Moreover, our system of prior appropriation is based on a strong public policy that water, a scarce and valuable resource, should be put to its maximum beneficial use. *See, e.g.,* § 37–92–102(1)(a), 15 C.R.S. (1990) ("It is hereby declared to be the policy of the state of Colorado ... to maximize the beneficial use of all of the waters of this state."); *State Eng'r v. Castle Meadows, Inc.,* 856 P.2d 496, 505 (Colo.1993); *Fellhauer v. People,* 167 Colo. 320, 336, 447 P.2d 986, 994 (1968) (noting that the policy of maximum utilization of water is implicit in the Colorado Constitution).