HAYSTACK RANCH, LLC,
Objector–Appellant,

v.

Frank A. FAZZIO, Applicant–Appellee,

and

Richard Stenzel, Division Engineer for
Water Division No. 1, Appellee
pursuant to C.A.R. 1(e).

Frank A. Fazzio, Plaintiff–Appellant,

v.

Haystack Ranch, LLC, Defendant–
Appellee.

Nos. 99SA120, 99SA198.

Supreme Court of Colorado,
En Banc.

April 10, 2000.

Holly I. Holder, P.C., Holly I. Holder, Priscilla S. Fulmer, Carrie L. Ciliberto, Den-

ver, Colorado, Attorneys for Objector–Appellant.

Friedlob, Sanderson, Raskin, Paulson & Tourtillott, LLC, Richard H. Goldberg, William B. Tourtillott, Denver, Colorado, Attorneys for Applicant–Appellee.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Alan J. Gilbert, Solicitor General, Steven O. Sims, First Assistant Attorney General, Felicity Hannay, Deputy Attorney General, Edward Kowalski, Assistant Attorney General, Natural Resources and Environment Section, Denver, Colorado, Attorneys for Appellee State and Division Engineers.

Friedlob, Sanderson, Raskin, Paulson & Tourtillott, LLC, Richard H. Goldberg, William B. Tourtillott, Denver, Colorado, Attorneys for Plaintiff–Appellant.

Holly I. Holder, P.C., Holly I. Holder, Priscilla S. Fulmer, Carrie L. Ciliberto, Denver, Colorado, Attorneys for Defendant–Appellee.

Justice MARTINEZ delivered the Opinion of the Court.

Haystack Ranch, LLC appeals a decree of abandonment of water rights. Frank A. Fazzio, who initiated this action for a decree of abandonment, appeals from an award of attorney fees and costs assessed against him after the voluntary dismissal of his tort claim.

The water court found that Fazzio established a presumption of abandonment by showing significant periods of unexcused nonuse by the previous owners of the water rights. The water court then found that Haystack failed to rebut the presumption of abandonment by not presenting evidence demonstrating a lack of intent to abandon by the previous owners. Thus, the water court issued a decree of abandonment after finding that the previous owners abandoned the water rights.

When he filed his application for a decree declaring Haystack's water rights abandoned, Fazzio also filed a tort claim for damages to his hay crops suffered as a result of Haystack's unauthorized water diversions. On the eve of trial, Fazzio voluntarily dismissed the tort action. As a term and condition of the voluntary dismissal, the water court awarded attorney fees and costs to Haystack. Fazzio appeals the amount awarded in attorney fees and costs by the water court.

The parties brought and argued these two appeals separately, but we consolidate them here for decision. We affirm the decree of abandonment. We vacate the award of attorney fees and costs and remand with instructions.

## I.

At issue in this case is the question of Haystack's water rights in the Snyder and Middleton ditches, located on Haystack Ranch (the property). The Snyder Ditch was decreed to divert 3.0 cubic feet of water per second (cfs) from Gove Creek, a tributary of West Plum Creek. The Snyder Ditch had an appropriation date of November 1, 1879. The appropriation date for the Middleton Ditch was March 3, 1888. It was decreed to divert 7.0 cfs from West Plum Creek. The property and the ditches are located in Water Division 1 (formerly Water District No. 8).

Haystack became the owner of the property in 1993. Before then, the property changed hands several times. The property's chain of title, in evidence before the water court, conveyed the Snyder Ditch each time the property passed to a new owner; the Middleton Ditch was not expressly conveyed in the deeds.

Also before the water court were the water district's diversion records for each ditch, which have sporadic and incomplete listings for the ditches. The diversion records indicate that the Snyder Ditch diverted water from 1920 to 1949, with the exception of four years. The diversion records have no listing for the Snyder Ditch from 1950 to 1966 with the exception of the years from 1955 to 1961 and 1963 to 1964. However, Joe Clayton, Water Commissioner of District No. 8 from 1963 to 1985, testified that the diversion records were incorrect regarding the recorded diversions from 1955 to 1961 and 1963 to 1964. According to Clayton's testimony, his

predecessor incorrectly entered the diversions from the Robinson Ditch as Snyder Ditch diversions during those years. After 1966, the Snyder Ditch reappears in the diversion records as inactive (1967–1972), and then unusable (1973–1982). During the period between 1983 and 1998, there is no listing for the Snyder Ditch in the diversion records.

The diversion records of the Middleton Ditch follow a similar pattern. In 1917, there is a diversion listing for acreage irrigation. The diversion records have no listing for the Middleton Ditch from 1919 to 1964. During the period from 1965 to 1997, the sporadic listings of the Middleton Ditch in the diversion records indicate that the ditch was inactive from 1965 to 1969. From then to 1993, with the exception of seven years of no listings, the ditch is listed as either inactive or unusable.

In addition to the chain of title and diversion records, other documentary evidence was before the water court, including advisory reports from water engineering firms and a water law attorney. These reports indicated that in certain areas there were no physical traces of the ditches or their headgates. These reports consistently concluded that each ditch was in such bad condition that each one would require reconstruction to be usable.

Due to the state of disrepair of the ditches, Haystack diverted the Snyder Ditch water rights from 1993 to 1995 through an unauthorized alternate point of diversion and the Middleton Ditch water rights through the Kountze Ditch in 1995.[1] That same year, Haystack requested an alternate, temporary point of diversion with the water commissioner.

As a result of Haystack's use of these water rights, the water commissioner curtailed the junior water right of the Fazzio Ditch. Fazzio then filed an application of abandonment for the water rights of the Snyder and Middleton ditches and a tort action alleging injuries to his hay crops as a result of Haystack's unauthorized diversions.

On the day trial was set to begin, Fazzio voluntarily dismissed the tort action under C.R.C.P. 41(a)(2), which allows a court to dismiss the action "upon such terms and conditions as the court deems proper." As a term and condition of the voluntary dismissal, the water court awarded Haystack attorney fees and costs in the amount of $10,000 for work completed in preparation of the tort action.

After a two-day trial, the water court held that the previous owners of the property had abandoned the water rights of the Snyder and Middleton ditches. The water court found that the Snyder Ditch water rights were not used for twenty-two years, from 1950 to 1972, and that the Middleton Ditch water rights were not used for fifty-four years from 1918 to 1972. However, in 1972, Buell, Haystack's predecessor, requested and obtained removal of the ditches from the division engineer's abandonment list. In finding nonuse, the water court looked to the ditches' state of disrepair and the lack of diversion records for each ditch. This long period of unexcused nonuse, the water court held, created a rebuttable presumption of the previous owners' intent to abandon the water rights. Because Haystack failed to present sufficient evidence to rebut the presumption, the water court entered a decree of abandonment.

On appeal, Haystack challenges the water court's decree of abandonment, and Fazzio challenges the water court's award of attorney fees to Haystack. After addressing the decree of abandonment, we then turn our attention to the issue of attorney fees.

II.

Haystack asserts that the trial court erroneously found nonuse based on the non-existence of diversion records. Haystack also argues that, if the findings of nonuse are correct, Haystack rebutted the presumption of intent to abandon by presenting evidence showing the previous owners' intent not to abandon. We reject these contentions and hold that the record contains sufficient evi-

---

1. The Kountze and Gove ditches are also located on the property. The water rights for these ditches, however, are not at issue in this case.

dence to support the findings and ruling of the water court.

### A.

The principles of law governing the abandonment of a water right in Colorado are well-established. The critical element of abandonment is intent. *See* § 37–92–103(2), 10 C.R.S. (1999) (defining abandonment as "the termination of a water right in whole or in part as a result of the intent of the owner thereof to discontinue permanently the use of all or part of the water available thereunder"); *see also Beaver Park Water, Inc. v. City of Victor*, 649 P.2d 300, 302 (Colo.1982). The intent to abandon a water right may be inferred through the circumstances of a case, and need not be proved directly. *See City & County of Denver v. Snake River Water Dist.*, 788 P.2d 772, 776 (Colo.1990); *Southeastern Colo. Water Conservancy Dist. v. Twin Lakes Assocs.*, 770 P.2d 1231, 1237 (Colo.1989).

An abandonment may occur when there is nonuse coupled with an intent to abandon. *See Consolidated Home Supply v. Town of Berthoud*, 896 P.2d 260, 266 (Colo. 1995). "Continued and unexplained nonuse of a water right for an unreasonable period of time creates a rebuttable presumption of intent to abandon." *Snake River*, 788 P.2d at 776. The determination of what constitutes an unreasonable amount of time varies with the facts of each case. *See id.; see, e.g.,* § 37–92–402(11), 10 C.R.S. (1999) (a period of ten years of nonuse creates a rebuttable presumption of abandonment for purposes of creating the division engineer's abandonment list); *Beaver Park*, 649 P.2d at 302 (finding twenty years of nonuse).

Once there is a presumption of intent to abandon, the burden of going forward shifts to the water right owner to introduce evidence rebutting the presumption. *See Snake River*, 788 P.2d at 776; *Twin Lakes*, 770 P.2d at 1237. Evidence sufficient to rebut the presumption of abandonment must consist of more than mere subjective declarations that the owner did not intend to abandon the water right. *See Twin Lakes*, 770 P.2d at 1238 (citing *Beaver Park*, 649 P.2d at 302). To rebut a presumption of abandonment, the owner must establish some fact or condition that excuses the nonuse or shows the owner's intent not to abandon the water right. *See People ex rel. Danielson v. City of Thornton*, 775 P.2d 11, 18 (Colo.1989).

The party seeking a decree of abandonment of a water right must prove the abandonment by a preponderance of the evidence. *See Snake River*, 788 P.2d at 776. Abandonment is a question of fact depending on the particular circumstances of each case. *See id.* The water court must determine the issue by "weighing all the evidence and assessing the credibility of witnesses. The weight to be assigned to the evidence is for the water court to decide." *Id.* (citations omitted). As a question of fact, a reviewing court will not disturb the water court's determination unless the evidence is wholly insufficient to support the decision. *See id.* (quoting *Thornton*, 775 P.2d at 19).

### B.

With these principles in mind we turn to the water court's finding of abandonment. The water court found that the Snyder Ditch went through a twenty-two year period of nonuse from 1950 to 1972. In making its finding of nonuse, the water court relied, in part, on the non-existence of diversion records for the Snyder Ditch from 1950 to 1966. The water court concluded that "in the absence of evidence to the contrary, the nonexistence of diversion records indicates lack of diversion for the relevant period."

Haystack argues that the water court erroneously concluded that the water rights were not used by relying on the nonexistence of diversion records. However, the water court also had before it both documentary and testimonial evidence that showed not only that the ditches were in unusable condition, but that neither ditch in fact had been used for a long period of time.

Most of this evidence pertained to both the Middleton and Snyder ditches. More importantly, the water court looked to this evidence in making its finding of nonuse regarding the Middleton Ditch. As such, it is unreasonable to conclude that the water

court disregarded this same evidence when making its finding of nonuse regarding the Snyder Ditch.

Specifically, this evidence included the reports and opinions of the engineering consulting firm of Wright Water Engineers and former Water Commissioner Joe Clayton. In 1964, Wright Water Engineers issued a report stating that the Snyder Ditch had not been "actively diverting [water] for the past twenty years or so" and was not "used much in past years." The report also recommended that "every effort should be made to reactivate" the ditch. Haystack presented no evidence that the owners at that time followed this recommendation.

At trial, the water court heard testimony from Clayton that the two ditches were in a state of disrepair during his tenure as water commissioner from 1963 to 1985. He testified that each ditch's headgate was in an unusable condition. The Middleton Ditch was not active during that time because it was filled by a landslide in the 1950s, and its headgate had been washed out. He also testified that he saw no evidence of any water diversions through the Snyder Ditch during his tenure. Finally, he noted that his recommendations to improve the ditches and use the water rights went largely ignored by the then-current owners.

Other evidence before the water court included a 1984 water rights evaluation drafted by the water engineering firm of Simons, Li, & Associates. The evaluation noted that neither the Snyder nor the Middleton Ditch had been "used in the past twenty to thirty years" and that each was not "presently operable." The evaluation also noted that "traces of [the Snyder Ditch] are no longer visible in some sections" and that the Middleton Ditch had "not been used for many years and ha[d] been obliterated over part of its course." Given the ditches' conditions, the firm opined that "the Middleton and Snyder [d]itches could not be feasibly reconstructed and used."

A year later, the Buell estate solicited the advice of a water law attorney, John Undem Carlson. Carlson bolstered Simons' observations, noting that the two ditches "require considerable rehabilitation before they could

be usable" and that "the cost of rehabilitating these structures is likely to be so great as to be uneconomic."

■ The evidence of disrepair and unusable conditions of the ditches in this case and their non-repair is consistent with a finding of nonuse. Water rights are usufructuary in nature, and nonuse retires the use entitlement to the stream. *See City & County of Denver v. Middle Park Conservancy Dist.,* 925 P.2d 283, 286 (Colo.1996). When this occurs, the property rights adhering to the particular water right no longer exist. *See id.* In *Twin Lakes,* we upheld a water court's decree of abandonment after looking to evidence showing the unusable state of the ditches in question. *See* 770 P.2d at 1235. We stated, "Nonuse can be manifested by conditions inconsistent with active use of a water right. Such conditions include failure to make beneficial use of water [and] failure to repair or maintain diversion structures." *Id.* at 1237–38; *see also Knapp v. Colorado River Water Conservation Dist.,* 131 Colo. 42, 50, 279 P.2d 420, 424 (1955) (highlighting lack of maintenance and upkeep of a destroyed ditch when upholding a finding of abandonment); *cf. Beaver Park,* 649 P.2d at 302 (looking to the fact that the diversion structure could be operable in a short period of time as a factor in finding a rebuttal to a presumption of intent to abandon).

In conclusion, we affirm the water court's findings of nonuse regarding the Middleton and Snyder ditches because the record supports the findings of the water court.

### C.

Haystack alternatively contends that the activities of the past and current owners rebut the presumption of an intent to abandon the water rights of the two ditches. However, this evidence fails to rebut the presumption of intent to abandon created through such long periods of nonuse by the previous owners.

Haystack relies on a paper chain of title as proof that the previous owners of the water rights of each ditch did not intend to abandon these rights. We first point out that the various deeds forming the property's chain of

title explicitly conveyed the Snyder Ditch, but not the Middleton Ditch. As such, only the chain of title of the Snyder Ditch was in evidence before the water court.

■ In support of its argument, Haystack focuses on two warranty deeds conveying the Snyder Ditch in 1952 and 1963. These years fall within the water court's finding of a period of nonuse between 1950 and 1972. As such, Haystack concludes that these conveyances of the Snyder Ditch water right evidence an intent not to abandon the water right during that period because "[n]o rational person would warrant title to a[n abandoned] real property interest."

Haystack's reliance on the chain of title as capable of overcoming a presumption of intent to abandon contradicts our precedent. We have held that a chain of title carrying a water right is not enough to rebut a presumption of intent to abandon. *See Knapp*, 131 Colo. at 54, 279 P.2d at 426. In *Knapp*, we stated that "the fact that the [water] right appears to have been carried through a continuous chain of paper title" is insufficient to overcome a presumption of intent to abandon. *Id.*

■ Haystack then points to several actions undertaken by Buell and Haystack as evidence of a lack of intent to abandon the water rights of the two ditches. Haystack argues that Buell's several successful attempts to remove the water rights of the two ditches from the division engineer's abandonment list from 1972 to 1984 evidence an intent not to abandon. As further proof of a lack of intent to abandon, Haystack underscores its diversion of the ditches' water rights through alternate points of diversion and its efforts to get these alternate points of diversion authorized by the state.

We agree with Haystack's analysis that these actions can constitute proof of an intent not to abandon. These actions, however, took place after the period during which the water court found a presumption of intent to abandon by the previous owners of each ditch, who did nothing suggesting use of the ditches' water rights prior to 1972. As such, these subsequent actions cannot rebut a pre-

sumption of the previous owners' intent to abandon.

■ We have held consistently that subsequent efforts by current owners to put water rights to beneficial use cannot revive water rights already abandoned by previous owners. *See Purgatoire River Water Conservancy Dist. v. Witte*, 859 P.2d 825, 833–34 (Colo.1993); *Twin Lakes*, 770 P.2d at 1243. In *Twin Lakes*, we upheld a water court's decision finding an abandonment by previous owners despite the activities of the current owner. *See* 770 P.2d at 1243. The current owner argued that he rebutted the presumption of intent to abandon by repairing some of the diversion structures and trying to put the water rights to their historical use. *See id.* at 1235. These activities would have overcome a presumption of intent to abandon had the previous owners undertaken them. However, we adopted the water court's view that such "activities constitute only an attempt to revive what was already dead." *Id.* at 1243 (quotation marks omitted).

In conclusion, we reject Haystack's arguments that the actions of Buell and Haystack rebutted the presumption of intent to abandon the water rights of the Snyder and Middleton ditches.

### D.

Finally, Haystack argues that the removal of the water rights of the ditches from the division engineer's abandonment list in 1972, 1976, 1980 and 1984 is strong proof that the previous owners never abandoned the water rights. That is, by removing the water rights from its abandonment list, the division engineer was satisfied that the previous owners did not abandon the water rights. Because administrative officials' decisions warrant considerable deference by the courts, Haystack contends that the division engineer's removal of the water rights from the abandonment list supports the conclusion that "the water rights have not, nor were they ever, abandoned or intended to be abandoned." In further support of this argument, Haystack points to the fact that 1984 was the last year that the division engineer placed the water rights of the Snyder and

Middleton ditches on its abandonment list. We disagree.

█ We observe that the division engineer's removal of the water rights from the abandonment list is evidence that the water court may consider in determining whether an abandonment has occurred. However, we conclude that the division engineer's decision alone is not sufficient for us to reverse the water court's finding of abandonment of the water rights of the Snyder and Middleton ditches. In reaching this conclusion, we look to the general scheme of the Water Right Determination and Administration Act of 1969 (the Act).

The Act outlines the statutory procedure for adjudicating water rights within each water division. *See* §§ 37–92–401 to –402, 10 C.R.S. (1999) (similar procedures for the 1988 and 1978 lists, respectively). The procedure begins with the division engineer preparing a tabulation list of all the water rights along with an abandonment list. *See* §§ 37–92–401(1)(a), –402(1)(a); *see generally Thornton*, 775 P.2d at 14–15 (outlining the same provisions of the Act). The division engineer may revise the abandonment list if she or he determines that abandonment is not appropriate for certain water rights. *See* §§ 37–92–401(4)(a), –402(4). For this purpose, the Act allows interested parties to object to the inclusion of a water right on the division engineer's abandonment list. *See* §§ 37–92–401(3), –402(3). Once revised, the division engineer files the abandonment list with the clerk of the water court. *See* §§ 37–92–401(4)(c), –402(4). The water court then enters a judgment on the division engineer's abandonment list after holding a hearing on any protest raised by an interested party. *See* §§ 37–92–401(6) to (7), –402(6) to (7). Section 37–92–401(1)(c) states, "The decennial abandonment list, when concluded by judgment and decree as provided in this section, shall be conclusive as to absolute water rights or portions thereof determined to have been abandoned."

█ The general scheme of the Act supports our observation that the division engineer's abandonment list, from which Buell managed to remove the ditches, is simply evidence that the water court may consider and does not constitute a definitive decree or judgment on the water rights in question. *See Santa Fe Trail Ranches v. Simpson*, 990 P.2d 46, 58 (Colo.1999) (holding that the water right determination function is assigned to the courts); *Thornton*, 775 P.2d at 14 (affirming a water court's finding that the water rights in question were not abandoned after the division engineer had placed the water rights on the abandonment list). Because the division engineer's determination is not a judgment, it alone cannot establish whether an abandonment has occurred. Instead, the water court, as the fact-finder, must weigh the evidence before it and reconcile conflicting evidence in making a determination of abandonment.

In this case, the water court had substantial evidence showing that the water rights of the two ditches had been abandoned as well as evidence of the division engineer's removal of the water rights from the abandonment list. In the water court's judgment, the evidence supporting abandonment outweighed the division engineer's decision to remove the water rights of the ditches from the abandonment list.[2] On appeal, we will not disturb the water court's findings that are supported by evidence in the record.

Because the record has sufficient evidence to support the water court's findings of abandonment, we affirm the findings of the water court. The division engineer's decision to remove the water rights from the abandonment list alone does not establish that the water rights have not been abandoned.

### III.

█ We now turn our attention to Fazzio's claim that the water court erred in awarding attorney fees and costs to Haystack after Fazzio voluntarily dismissed his

---

2. Clayton's testimony at trial supports this determination by the water court. Clayton testified that, during his tenure as water commissioner, filing the protest without offering additional proof of use was sufficient to remove the water rights from the abandonment list. Consequently, the water court appropriately determined that this evidence did not outweigh the evidence showing abandonment.

tort action under C.R.C.P. 41(a)(2) on the day trial was set to begin. Rule 41(a)(2) allows a plaintiff to move to dismiss an action voluntarily and provides that a court may dismiss the action "upon such terms and conditions as the court deems proper." The terms and conditions that a court deems proper may include attorney fees and costs. *See American Water Dev., Inc. v. City of Alamosa,* 874 P.2d 352, 381 (Colo.1994) [hereinafter *AWDI* ]. However, a court must limit those attorney fees and costs to work that will not be useful in continuing litigation. *See id.* at 382.

After Fazzio's voluntary dismissal, Haystack moved for attorney fees and costs, which the water court awarded after trial in the amount of $10,000. On appeal, Fazzio claims that the water court erred by awarding attorney fees for work that was useful in Haystack's defense of Fazzio's claims of abandonment. That is, the water court failed to determine the amount of Haystack's expenditures that pertained exclusively to defending Fazzio's tort claim. Fazzio further contends that the water court failed to apply the correct standard in determining the attorney fees and costs. We agree to the extent that we view the water court's order as insufficient, and remand for additional findings and conclusions.

■■■ When awarding attorney fees and costs as a term and condition of voluntary dismissal under C.R.C.P. 41(a)(2), a court should not award fees and costs that would be useful in continuing litigation. *See AWDI,* 874 P.2d at 382 (citing *McLaughlin v. Cheshire,* 676 F.2d 855, 856–57 (D.C.Cir. 1982)); *see also Koch v. Hankins,* 8 F.3d 650, 652 (9th Cir.1993). The terms and conditions under Rule 41(a)(2) are concerned with a remedy for the defendant, not punishment for the plaintiff. *See AWDI,* 874 P.2d at 380. As such, a court should limit the award to the defendant's work rendered useless by the plaintiff's voluntary dismissal. *See id.* at 381–82.

■■■ Appellate courts review an award of attorney fees and costs for an abuse of discretion, which occurs when "the findings and conclusions of the trial court are so manifestly against the weight of the evidence as to compel a contrary result." *In re Water Rights of Hines Highlands Ltd. Partnership,* 929 P.2d 718, 728 (Colo.1996).

■■■ After reviewing the water court's order and the record, we recognize that the water court did not make findings that the award consisted only of attorney fees and costs that were useful in Haystack's defense of the tort action.

Instead, the water court's order demonstrates that, although the water court was aware of the danger of overlap between the work completed for the abandonment claims and the tort action, it did not attempt to isolate the expenditures for the tort claim. The water court began by noting that "[r]eimbursement of attorney fees and expenses is limited to work that will not be useful in continuing litigation. Any work that . . . was done in defense of the damages claim that was useful in defending the abandonment claims cannot be reimbursed."[3]

Reaching the $10,000 amount, the water court had evidence consisting of itemized billing statements from Haystack and its experts. The itemized billing statements did not explicitly distinguish between time spent on the abandonment claims and the tort claim. For each entry, the itemized billing statements listed the date, subject matter, time spent and hourly rate.

While the titles to some entries reveal that the work was exclusively for the abandonment claims, other entries feasibly apply to all the claims. For example, Haystack has several entries for the trial brief that covered all three claims. From these entries alone, it is impossible to distinguish between the amount of time spent on the abandonment

---

3. The water court also applied the factors outlined in Colo. RPC 1.5(a) to determine whether the amount awarded was reasonable. The factors listed in Rule 1.5(a) that the court looked to included the time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly. Because we agree with Fazzio's claim that the court failed to limit its award to work pertaining to the tort action, we do not reach the issue whether the water court's award was otherwise reasonable.

claims and the amount spent on the tort claim in writing the brief.

Not only do the itemized billing statements fail to divide the costs and fees between the three claims, but the water court made no attempt to do so. Moreover, the water court did not look to Haystack, the party with the most information on the entries, to explain the itemized billing statements in greater detail. In fact, the water court stated that it would not require Haystack to discern with any more specificity the complaint to which each of the entries pertained. The lack of any evidence concerning the general amounts expended in defense of the tort claims undermines the water court's order. There is no competent evidence supporting the trial court's allocation.

In this sense, this case is distinguishable from *AWDI* where we upheld the trial court's award after the parties moving for attorney fees explained their time records in detail by identifying the expenditures of the dismissed claim through testimonial and documentary evidence. *See* 874 P.2d at 383. In that case, the plaintiff had claims dealing with land grants, tributary and nontributary water rights. *See id.* at 376–77. After five years of discovery, the plaintiff withdrew the tributary water rights claim, and the court awarded attorney fees and costs as a condition and term of the dismissal. *See id.* at 377.

In addition to the time records that were similar to those in this case, the trial court heard the attorneys' testimony regarding the allocation of fees and expenses between the tributary and nontributary claims. *See id.* at 383. Two other attorneys went through the billing statements of their respective firms item by item to estimate the amount of time spent on each claim. *See id.* at 384. We upheld the estimates of the reconstructed time records because there was evidence to support the allocations made by the attorneys. *See id.* We also concluded that the evidence "was sufficient to permit the trial court, applying the proper standard, to allocate fees and expenses between those that were allowable and those that were not." *Id.*

The procedure carried out in *AWDI* provides guidance for this case. The water court should give Haystack the opportunity to present evidence as to amounts reasonably expended in defense of the tort claim. After considering the newly presented evidence, the water court then may make findings and enter an appropriate award.

### IV.

Accordingly, we affirm the decree of abandonment. We vacate the award of attorney fees and costs and remand with instructions.