**EAST TWIN LAKES DITCHES AND WATER WORKS, INC., Complainant–Appellant,**

v.

**BOARD OF COUNTY COMMISSIONERS OF LAKE COUNTY, Respondent–Appellee,**

and

The City of Aurora, Colorado, a municipal corporation of the counties of Adams, Arapahoe, and Douglas, acting by and through its Utility Enterprise, Intervenor–Appellee,

and

Steve Witte, Division Engineer, Appellee pursuant to C.A.R. 1(e).

No. 02SA270.

Supreme Court of Colorado.

Sept. 8, 2003.

Joseph B. Dischinger, Grimshaw & Harring, PC, Denver, Colorado, Attorneys for Complainant–Appellant.

Steven T. Monson, Bradford R. Benning, Felt, Monson & Culichia, LLC, Colorado Springs, Colorado, Attorneys for Respondent–Appellee.

John M. Dingess, Stephanie J. Neitzel, Duncan, Ostrander & Dingess, PC, Denver, Colorado, Attorneys for the Intervenor–Appellee.

Ken Salazar, Colorado Attorney General, Linda Bassi, Assistant Attorney General, Natural Resources Section, Denver, Colorado, Attorneys for Appellee Pursuant to C.A.R. 1(e).

Justice RICE delivered the Opinion of the Court.

East Twin Lakes Ditches and Water Works, Inc., ("ETLD") appeals the water court's holding that the water right in the Derry Ditch No. 1, owned by the Lake County Board of County Commissioners ("Lake County"), was not abandoned. ETLD contends that (1) the water right was abandoned due to non-use for approximately thirty years; and (2) the decision by the predecessors of Lake County to not line the ditch was affirmative proof of that abandonment.

Lake County, on the other hand, although conceding that non-beneficial use of the water for approximately thirty years gave rise to a presumption of abandonment, nevertheless argues that it successfully rebutted that presumption. Lake County contends that neither it nor its predecessors intended to abandon the water right, that they took numerous actions inconsistent with an intent to abandon, and that the decision to not line the ditch was made for reasons other than an intent to abandon.

We affirm the water court's holding that the water right was not abandoned. Abandonment of a water right is a factual matter that is properly left to the sound discretion of the trial court. That court's holding will not be overturned on appeal unless the evidence is "wholly insufficient to support the decision." *Haystack Ranch, LLC v. Fazzio*, 997 P.2d 548, 552 (Colo.2000). Because we find that the record contains sufficient evidence to support the holding of the water court in this case, we affirm.[1]

## I. FACTS AND PROCEDURAL HISTORY

The Derry Ditch No. 1 is a senior water right with an appropriation date of 1879 and an adjudication date of 1904. The decree for the Derry Ditch No. 1 is in the amount of four cubic feet of water per second ("cfs") for the irrigation of two hundred acres on what is commonly known as the "Hallenbeck Ranch"[2] in Lake County. The ditch has two decreed alternate points of diversion, one on the main stem of the Arkansas River, and

---

1. The following issues were appealed to us pursuant to C.A.R. 1(a)(2):
   1. Is there any competent evidence in the record justifying the failure by Lake County and its predecessor to use a water right for thirty years?
   2. Where a ditch must be lined in order to apply water to beneficial use, and the owner

   of the water right (a limited partnership) considers and decides not to line the ditch, is that evidence, as the trial court found, that the partnership intended to preserve the water right?

2. Also spelled "Hollenbeck" in some documents.

another out of Beaver Dam Creek, a tributary of the Arkansas.

The ditch historically carried water a distance of approximately six miles to irrigate the Hallenbeck Ranch. From the 1930s through the 1960s, the water right was used for irrigation and in placer mining operations on the ranch. In 1962, a new lower Derry Ditch No. 1, paralleling the original ditch, was constructed in an effort to improve the delivery of water to the ranch. Testimony at trial indicated that at least some of the time during the 1960s, the full amount of the decreed water reached and was put to beneficial use on the ranch.

In 1972, the Hallenbeck Ranch and all of its water rights were purchased by the Twin Lakes Recreation Land Investment Company ("TLR"), a limited partnership comprised of two general partners and approximately eighty-two limited partners. TLR purchased the Hallenbeck Ranch and its water rights with the intent of reselling it for residential development. Despite apparently diligent sales efforts, however, the ranch and its water rights did not sell until 1998 when they were purchased by Lake County.

During the entire twenty-six years that TLR owned the property, the ranch and its water rights were managed by Walter Clotworthy. Throughout this period of time, Clotworthy was unable to get the Derry Ditch No. 1 to carry water more than one-half to one mile down its length. The first section of the ditch was evidently so porous that even the full decree of four cfs would travel only a short distance before it seeped into the bottom of the ditch and disappeared. Clotworthy testified that at various times during his tenure he did grading and shovel work on the ditch in an unsuccessful attempt to improve its carrying capacity. He also made numerous diversions of water into the ditch in a similarly unsuccessful effort to saturate and seal the bottom of the ditch.

In 1985, TLR commissioned Leonard Rice Consulting Water Engineers to perform an investigation and appraisal of its water rights ("Rice Report"). The report concluded that

the Derry Ditch No. 1 had not transported water to the ranch in approximately twenty years, and accordingly attributed no transferable consumptive yield to the water right. Upon receipt of the Rice Report, one of TLR's general partners, Gordon Mickelson, evidently unaware up until this point that the ditch was inoperable,[3] instructed Clotworthy to "do whatever he could" to get the ditch to carry water. After once again attempting unsuccessfully to improve the ditch's carrying capacity, Clotworthy informed Mickelson sometime in the late 1980s that it was Clotworthy's opinion that the ditch would need to be lined in order to successfully transport irrigation water to the ranch.

Mickelson subsequently raised the issue of lining the ditch to the limited partners at a partnership meeting. Because the amount of money that could be assessed the limited partners had already been exhausted, and because it was believed that a sale of the ranch was imminent, Mickelson was unable to secure the partnership funds necessary to line the ditch. As a result, the Derry Ditch No. 1 remained functionally inoperable for approximately another ten years, up until and after the ranch and water rights were sold to Lake County in 1998.

Despite its failure to line the ditch, TLR took other actions that were consistent with an intent to protect and maintain all of its water rights, including the Derry Ditch No. 1. In 1995, for example, TLR filed an action seeking to correct a discrepancy between the decreed and actual points of diversion for the Derry Ditch No. 1. Some time prior, TLR had also filed a statement of opposition to a water rights application out of concern that it might conflict with TLR's water rights.

Lake County proceeded with the purchase of the ranch in 1998 with full knowledge of the status of the Derry Ditch No. 1. A former Lake County Commissioner testified that (1) the county believed the ditch might be repaired, and (2) the water right had value to the county because they could use it for wetlands mitigation in the event that the county successfully consummated a land swap with the federal government.[4] After

---

3. William Sims, however, who preceded Mickelson as a general partner, testified that Clotworthy had told him as early as 1982 that he had been unable to get water down the ditch.

4. The former commissioner explained that Lake County wished to acquire and develop a tract of federally-owned land located at the base of Ski Cooper, a county-owned ski area. Because such

acquiring the water right, Lake County repaired the headgate and ran water into the Derry Ditch No. 1 in 1999 and 2000.

ETLD filed suit in late 1998 seeking a declaratory judgment that the water right associated with the Derry Ditch No. 1 had been abandoned. After hearing three and one-half days of testimony, the judge in Water Division No. 2 held that ETLD had failed to establish by a preponderance of the evidence that the water right to the Derry Ditch No. 1 had been abandoned.

On appeal to this court, ETLD does not challenge the trial court's findings with respect to the period prior to 1972. ETLD instead urges this court to find that the Derry Ditch No. 1 was abandoned due to non-use for the approximately thirty-year time period between 1972 and 2002. ETLD also contends that even if the water right was not abandoned during the 1970s, the decision by TLR in the late 1980s to not line the ditch, followed by approximately another ten years of non-use, is sufficient by itself to give rise to a presumption of abandonment pursuant to section 37–92–402(11), 10 C.R.S. (2002). ETLD argues that the trial court erred in its conclusion that the evidence presented by Lake County was sufficient to successfully rebut that presumption.

Lake County concedes that the approximately thirty-year period between 1972 and 2002 during which the Derry Ditch No. 1 water right was not applied to beneficial use gave rise to a presumption of abandonment. The county contends, however, that there was no intent to abandon, that the county and TLR engaged in numerous activities that were inconsistent with an intent to abandon, and that the water court correctly concluded that the presumption had been rebutted. We agree. Our examination of the record reveals sufficient evidence to support the trial court's finding of no abandonment.

## II. ANALYSIS

The principles of law governing the issue of abandonment in Colorado are well established. "Abandonment of a water right" is defined as "the termination of a water right in whole or in part as a result of the intent of the owner thereof to discontinue permanently the use of all or part of the water available thereunder." § 37–92–103(2), 10 C.R.S. (2002). This court has consistently held that a finding of abandonment requires the concurrence of two elements: a sustained period of non-use and an intent to abandon. *Haystack Ranch, LLC v. Fazzio,* 997 P.2d 548, 552 (Colo.2000); *Southeastern Colo. Water Conservancy Dist. v. Twin Lakes Assoc., Inc.,* 770 P.2d 1231, 1237 (Colo. 1989); *Farmers Reservoir & Irrigation Co. v. Fulton Irrigating Ditch Co.,* 108 Colo. 482, 486, 120 P.2d 196, 199 (1941). The objector must prove abandonment by a preponderance of the evidence. *Haystack Ranch,* 997 P.2d at 552.

Because intent is a subjective element that is difficult for a complainant to prove by direct evidence, Colorado law provides that failure to apply water to a beneficial use for a period of ten years creates a rebuttable presumption of abandonment. § 37–92–402(11), 10 C.R.S. (2002). The presumption of abandonment shifts the burden of going forward to the water rights owner, *Haystack Ranch,* 997 P.2d at 552, but is insufficient in and of itself to prove abandonment. *Farmers Reservoir,* 108 Colo. at 487, 120 P.2d at 199. Rather, the element of intent remains the touchstone of the abandonment analysis, and the owner of the water right can rebut the presumption of abandonment by introducing evidence sufficient to excuse the non-use or demonstrate an intent not to abandon. *Haystack Ranch,* 997 P.2d at 552. Acceptable justifications for an unreasonably long period of non-use are limited, however, and a successful rebuttal requires objective and credible evidence, not

an acquisition could only occur through a land swap, however, Lake County hoped to exchange a portion of the Hallenbeck Ranch for the base area. Additionally, however, because the county's proposed base-area development would destroy wetlands, the federal government would also require that such destruction be mitigated

by the development of wetlands elsewhere. Lake County therefore hoped that the Derry Ditch No. 1 water right could be used to create riparian habitat on the retained portion of the Hallenbeck Ranch, thereby satisfying the federal requirements.

merely subjective statements of intent by the water rights owner. *Id.; Twin Lakes Assoc.,* 770 P.2d at 1238.

A review of our precedent reveals a number of different factors that Colorado courts have considered as indicative of an intent not to abandon a water right. Significantly, although failure to put the water to beneficial use may give rise to the presumption of abandonment in the first instance,[5] it is not the standard by which the second element, intent to abandon, has been measured. Instead, in determining whether or not an owner intended to abandon his water right, Colorado courts have looked at such factors as: (1) repair and maintenance of diversion structures, *Haystack Ranch,* 997 P.2d at 554; *Twin Lakes Assoc.,* 770 P.2d at 1237; (2) attempts to put the water to beneficial use, *Haystack Ranch,* 997 P.2d at 554; *Twin Lakes Assoc.,* 770 P.2d at 1237; (3) active diversion records and non-appearance of the water right on the State Engineer's abandonment list, *Haystack Ranch,* 997 P.2d at 555; (4) diligent efforts to sell the water right, *City and County of Denver v. Snake River Water Dist.,* 788 P.2d 772, 778 (Colo.1990); *People ex rel. Danielson v. City of Thornton,* 775 P.2d 11, 20–22 (Colo.1989); *Beaver Park Water, Inc. v. City of Victor,* 649 P.2d 300, 302–03 (Colo.1982); (5) filing documents to protect, change, or preserve the right, *Haystack Ranch,* 997 P.2d at 554; *Danielson,* 775 P.2d at 20; *Twin Lakes Assoc.,* 770 P.2d at 1237; (6) leasing the water right, *Beaver Park,* 649 P.2d at 302–03; and (7) economic or legal obstacles to exercising the water right, *Consolidated Home Supply Ditch & Reservoir Co. v. Town of Berthoud,* 896 P.2d 260, 266 (Colo.1995); *Hallenbeck v. Granby Ditch & Reservoir Co.,* 160 Colo. 555, 567, 420 P.2d 419, 426 (1966). *See also Knapp v. Colorado River Water Conservation Dist.,* 131 Colo. 42, 49–52, 279 P.2d 420, 424–25 (1955). While none of these factors is necessarily conclusive, their cumulative weight, as assessed by the water court, may be enough to rebut a presumption of abandonment. On the other hand, if these factors are insufficient or nonexistent, only then is the failure

to put the water to a beneficial use enough by itself to sustain a finding of abandonment.

■ Because resolution of an abandonment case is largely based upon the weighing of evidence and assessing the credibility of witnesses, this court has consistently held that the water court's resolution of an abandonment case will not be disturbed on appeal unless the evidence contained in the record is "wholly insufficient to support the decision." *Haystack Ranch,* 997 P.2d at 552; *Danielson,* 775 P.2d at 19. It is therefore incumbent upon this court to search the record for any evidence in support of the decision, and if successful, to uphold the decision even if, had this court been the trier of fact, it might have held differently. *Simpson v. Yale Invs., Inc.,* 886 P.2d 689, 698 (Colo.1994) (quoting *Peterson v. Ground Water Comm'n,* 195 Colo. 508, 516, 579 P.2d 629, 634 (1978)). With these principles in mind, we now turn to the task of determining whether there was sufficient evidence in the record of this case to support the water court's decision that the Derry Ditch No. 1 was not abandoned in the thirty-year period between 1972 and 2002.

■ Two of the TLR general partners (Mickelson and Sims), Clotworthy, and a former Lake County Commissioner all testified that despite the problems with the carrying capacity of the Derry Ditch No. 1, it was never the intent of Lake County or TLR to abandon the water right. To the contrary, each asserted that the water rights associated with the Hallenbeck Ranch were exceedingly important assets, and of those rights, the Derry Ditch No. 1 was the most important because it was the most senior. Mickelson and Sims also indicated that all of the Hallenbeck Ranch water rights were critical components of their sales efforts. These statements, although valid evidence to be weighed by the water court, are necessarily subjective and therefore fall well short of the quantum of proof necessary to rebut a presumption of abandonment. *Twin Lakes Assoc.,* 770 P.2d at 1238.

■ There is, however, an abundance of other objective evidence in the record regarding actions taken by TLR and Lake

---

5. *See* § 37–92–402(11), 10 C.R.S. (2002) ("failure for a period of ten years or more to apply to a beneficial use the water available under a water right when needed by the person entitled to use same shall create a rebuttable presumption of abandonment of a water right....").

County that were inconsistent with an intent to abandon the Derry Ditch No. 1. These include attempts to repair the ditch and divert water, the filing of legal documents with regard to the water right, the fact that the water right never appeared on the State Engineer's abandonment list, the lease of the water right, diligent efforts to sell the ranch and water rights, and financial obstacles to exercising the water right. We turn now to an examination of this evidence.

There was a substantial amount of evidence in the record regarding maintenance and repair of the Derry Ditch No. 1. TLR engaged Clotworthy as an on-site ranch manager almost immediately upon TLR's acquisition of the Hallenbeck Ranch in 1972. His duties included irrigation and maintenance of all the water rights and ditches on the ranch, and although not specific to the Derry Ditch No. 1, this fact is nevertheless indicative of TLR's intent to not let its water rights lie idle. More significantly, however, Clotworthy made a number of attempts during his tenure to maintain the Derry Ditch No. 1 and apply the water to beneficial use. He testified that during the time period from 1985 to 1990, and perhaps earlier,[6] he used a tractor, grader, and shovel in attempts to get the ditch to carry water. Lake County also engaged in maintenance and repair efforts after acquiring the property and water rights in 1998. The county manually cleared debris from the ditch in late 1998 or early 1999, repaired the headgate in 2000, brought in heavy equipment to clear the ditch in 2001, and had plans to line the ditch at the time of trial.

There was also evidence introduced at trial regarding attempts—although unsuccessful—to put the water right to beneficial use in the years between 1972 and 2002. Clotworthy testified that he diverted water into the ditch a number of times over his years at the ranch, either in an attempt to saturate and seal the bottom of the ditch, or to check the success of his grading efforts. The diversion records for the Derry Ditch No. 1 are generally consistent with this testimony,[7] although there were no diversions recorded at all from 1992 through 1999. A former Lake County Commissioner, however, testified that the county did in fact attempt to divert water into the ditch in either late 1998 or in 1999. The Derry Ditch No. 1 was never listed during this time on the State Engineer's abandonment list.[8]

TLR and Lake County also took legal and investigative actions during their years of ownership that were consistent with the use and protection of their water rights. Sims testified that during his involvement with the partnership,[9] TLR actively investigated several other water rights applications and filed one statement of opposition, to ensure that its water rights were protected. In 1995, TLR filed several applications with the water court to correct invalid points of diversions in its water decrees, including a filing for the Derry Ditch No. 1. In 1998, Lake County filed jointly with the City of Aurora to the water court requesting that the Derry Ditch No. 1 be used as an alternate point of diversion in a change case.[10]

The next evidence presented at trial of an intent not to abandon was the lease of the

6. Clotworthy's testimony at trial as to his earlier efforts was somewhat ambiguous; however, he clearly indicated in a 2001 affidavit submitted to the court that he used a tractor and grader to work on the Derry Ditch No. 1 in 1975 and 1976.

7. A summary of the diversion records for the Derry Ditch No. 1 was included in the report submitted by Ross Bethel, Lake County's water rights expert. The records showed:
(1) Diversions made in each year from 1972 through 1978, with estimated amounts varying from 2.8 cfs in 1973 to 4.0 cfs in 1978.
(2) No diversion information collected from 1979 through 1984. Water may or may not have been diverted during those years.
(3) 4.0 cfs diverted in 1985.
(4) No diversion information collected for 1986 and 1987.

(5) No water diverted in 1988.
(6) Water diverted in 1989, 1990, and 1991, although not the full amount of the decree.
(7) No water diverted from 1992 through 1999.

8. We note that such an absence is by no means conclusive evidence that a water right has not been abandoned; rather, it is simply another quantum of evidence to be considered by the water court.

9. Sims ceased active involvement with the partnership in 1985 when he suffered a heart attack. Mickelson then took over his duties.

10. Case No. 98CW137. The water court also incorrectly found that the Derry Ditch No. 1 was included in a concurrent Lake County water rights application (Case No. 98CW173).

Derry Ditch No. 1. In 1980, TLR leased the Hallenbeck Ranch and all its water rights to Box Creek Mining Company, a business entity initially owned by Clotworthy. The lease was for a period of ten years with an optional ten-year renewal. Clotworthy's intent was to recommence the historic placer mining operations on the ranch, using the Derry Ditch No. 1 water rights to augment groundwater used in the mining process.[11] He testified that the Derry Ditch No. 1 water right in particular was critical to his plans because the ranch's other water rights lacked the seniority necessary to provide reliable augmentation water. When Clotworthy failed to secure adequate financing for his venture, he sold the company, retaining a mortgage and royalty interest. The new owners appeared to be on the verge of securing financing by the late 1980s and accordingly negotiated a renewal of Box Creek Mining Company's lease with TLR in late 1989. The venture ultimately failed, however, evidently due to partnership squabbles and the failure to obtain financing, and the lease was terminated in 1992.

Regardless of the failure of the mining venture, the lease of the Derry Ditch No. 1 by TLR to Box Creek Mining Company, even for an undecreed use, demonstrates an intent to not abandon the water right. *See Beaver Park*, 649 P.2d at 302–03(finding that, among other activities, leasing a water right provided sufficient evidence to rebut a presumption of abandonment); *cf. Lengel v. Davis*, 141 Colo. 94, 100–01, 347 P.2d 142, 146 (1959) (finding that an undecreed change in point of diversion, rather than proving abandonment, showed an intent not to abandon). Moreover, the lease did not appear to be some sort of legal contrivance between TLR and Clotworthy; to the contrary, the subse-

quent sale and extensive financing efforts all indicated that the mining venture was a serious and viable endeavor. In addition, the Derry Ditch No. 1, and not just any of the Hallenbeck Ranch water rights, was a critical component of the lease.

Although not specific to the Derry Ditch No. 1, intent not to abandon was next demonstrated by TLR's consistent efforts to sell the ranch and its water rights throughout the duration of its ownership. *See City and County of Denver v. Snake River Water Dist.*, 788 P.2d 772, 778 (Colo.1990) ("Diligent efforts to sell a water right are evidence of intent not to abandon."); *Danielson*, 775 P.2d at 21 ("Actual good faith efforts to sell a water right ... are strongly indicative of absence of intent to abandon and provide objective evidence of the intent that a water right not be abandoned."). TLR introduced a voluminous exhibit at trial detailing the partnership's sales efforts from 1975 through 1998,[12] including documentation of marketing efforts, preliminary letters of interest, sales proposals, two signed option agreements, and two signed sales contracts (which ultimately failed).[13]

ETLD argues, however, that unlike the water rights at issue in *Snake River* and *Danielson*, the sales efforts expended by TLR were not specific to the Derry Ditch No. 1 and are therefore irrelevant. Mickelson testified that the partnership had no interest in selling the water rights separately from the ranch because to do so would have rendered the ranch property relatively valueless. As a result, the Derry Ditch No. 1 water right was simply marketed collectively along with the ranch and its other water rights. ETLD further argues that because the Rice Report, which was included in the ranch's marketing materials, attributed no transferable consumptive yield to the Derry

**11.** Clotworthy also stated that although the Derry Ditch No. 1 was decreed for agricultural and not mining purposes, he planned to apply for a change of use along with his augmentation plan.

**12.** Entries were absent only for the years of 1983 and 1995.

**13.** ETLD appears to find support in *Knapp v. Colorado River Water Conservation Dist.*, 131 Colo. 42, 56, 279 P.2d 420, 427 (1955), where we stated "[s]peculation on the market, or sale expectancy, is wholly foreign to the principle of

keeping life in a proprietary right and is no excuse for failure to perform that which the law requires." *Knapp*, however, does not stand for a general proposition that attempts to sell a water right cannot be evidence of intent not to abandon that right, and its holding must be viewed in light of its facts. In *Knapp*, we affirmed the trial court's determination just as we do here, noting that "where supported by competent evidence [the trial court's] finding will not be disturbed on review." Furthermore, in *Knapp*, testimony of the owner was the only evidence proffered regarding any attempt to sell.

Ditch No. 1, the water right lent no value whatsoever to the sales efforts. The evidence, however, does not support this contention. To the contrary, the water right's value was clearly demonstrated by Box Creek Mining's interest in using it as a source of augmentation water, and Lake County's interest in using it to create riparian habitat. We accordingly find that TLR's sales efforts were some indicia of an intent not to abandon the Derry Ditch No. 1.

The final type of evidence this court has considered in rebutting a presumption of abandonment is the presence of legal or economic obstacles to exercising a water right. *Hallenbeck v. Granby Ditch & Reservoir Co.,* 160 Colo. 555, 567, 420 P.2d 419, 426 (1966) ("[A] reasonable justification for non-use may very well exist where it can be shown that economic, financial or legal difficulties or natural calamities prevented the storing of all the water that was originally decreed."). Such conditions were arguably present here; testimony indicated that the partnership declined to line the ditch because the amount of money that could be assessed the limited partners had already been exhausted, and because it was believed that a sales contract was imminent.

ETLD argues, however, that the partnership's failure to act, followed by approximately another ten years of non-use is instead affirmative proof of abandonment. The trial court took the opposite view, finding that the request Mickelson made to the limited partners to line the ditch was "indicative of a desire to maintain the ditch and is contrary to an intent to abandon." We find no error in the trial court's conclusion. The task before the court was to determine the intent of the partnership, as an entity, with regard to the use or abandonment of the water right. Such intent would be better evidenced by the general partner's actions than by an investment decision made by limited partners who likely had no familiarity whatsoever with the Derry Ditch No. 1.

In summary, the record indicated that Lake County and TLR took a number of actions inconsistent with an intent to abandon. These included maintenance of the

ditch, diversions into the ditch in an attempt to put the water to beneficial use, leasing the water right, filing actions in water court to protect the right, efforts to sell the right, and economic obstacles to exercising the right. None of these actions was by itself conclusive nor sufficient to rebut the presumption of abandonment. Indeed, over a period of thirty years, many of these activities were inconsistent, sporadic, and subject to contradictory interpretations. Nevertheless, taken as a whole, we find there was sufficient evidence in the record to support the water court's finding of no abandonment. The water court's findings of fact in an abandonment case are accorded considerable deference and we will not reverse absent a showing of abuse · of discretion. There was no such abuse here.

### III. CONCLUSION

The non-use of the water right associated with the Derry Ditch No. 1 from approximately 1972 to 2002 gave rise to a presumption of abandonment; however, the water court held that Lake County had successfully rebutted that presumption by its presentation of evidence at trial. Our examination concludes that there was sufficient evidence in the record to support the water court's ruling. We therefore affirm the water court's holding that the Derry Ditch No. 1 was not abandoned.

Justice HOBBS, dissents, and Chief Justice MULLARKEY and Justce KOURLIS join in the dissent.

Justice HOBBS, dissenting:

I respectfully dissent. The water court found that: (1) an investment partnership purchased the Hallenbeck Ranch and associated water rights in 1972; (2) the "purpose of the partnership was to hold the property until it could be re-sold to a developer" and the "premise was that the next big development boom would be in the Lake County area;" (3) Mr. Bethel, a water engineer-who investigated this water right and whom the water court found to be credible-"concluded that the water [had] not been delivered since 1972;" [1] (4) the ranch manager reported to

---

1. The appropriation date of the Derry Ditch No. 1 was December 1, 1879, 4 c.f.s., for irrigation.

Leonard Rive Consulting Water Engineers, Inc.,

the partnership that "the Derry No. 1 needed to be lined to get water to the Ranch;" and (5) the subsequent manager of the ranch "was unable to get the partnership to fund the project."

Despite making these findings, the trial court concluded that the purchaser of the water right, Lake County, had overcome the presumption of abandonment that arises under Colorado law from an extended period of nonuse and that the party invoking abandonment did not prove it by a preponderance of the evidence.

Based on the trial court's findings and the record as a whole, I conclude that the water court reached this conclusion of law erroneously-abusing its discretion-by: (1) giving effect to unsuccessful attempts at putting the water right to use; (2) rewarding an extended period of speculating in the water right after the owner of the right decided it would not invest the funds necessary to use the water right; and (3) failing to conclude, based on the evidence, that the water right had been abandoned before Lake County purchased it in 1998.

### A. Unsuccessful Attempts to Put the Water Right to Use

In my view, the water court erroneously excused the investment partnership's nonuse of the Derry Ditch No. 1 water right.

First, having found that the ranch manager was unable to get the diverted water to its place of beneficial use, unless the investment partnership funded water delivery improvements—which it decided not to do—the water court gave effect to the ranch manager's request to fund the necessary improvements despite the owner's affirmative decision not to:

> (Clotworthy) testified that from 1972–1980 he tried on at least ten occasions to get water down the Derry No. 1.... The Court finds that the failure to fund the project was unfortunate. The important factor is that the request to fund is indicative of a desire to maintain the ditch and is contrary to an intent to abandon.

The evidence is clear on this point: the ranch manager desired to make the necessary water delivery improvements, so that the water

right could be utilized for its decreed use, and the investment partnership desired not to.

Second, the water court gave effect to a lease that did not result in any beneficial use of the water. The lease was to the ranch manager for a mining venture that never materialized:

> Clotworthy had a mining lease for the Hallenbeck Ranch from 1980 to 1998 and the lease included water rights. He envisioned using the water rights in an exchange by using the irrigation water for another use (mining).

The water court again refers to Clotworthy's intent:

> Clotworthy specifically testified that the water rights to Derry No. 1 were such an integral part of his operation that he would never have intended to relinquish the rights.

No use of the water right resulted from the lease. In contrast, water rights leased to an actual water user, for example as an emergency reserve for a city, indicate intent to preserve the rights. *Beaver Park Water, Inc. v. City of Victor,* 649 P.2d 300, 302–03 (Colo.1982).

The water court mentions Clotworthy's intent not to abandon the water right several times in its order, but his intent-either as holder of the mining lease or as ranch manager-is immaterial. The issue is the owner's intent.

### B. Speculation

Beneficial use is essential to the establishment of a water right and its perpetuation. *Knapp v. Colorado River Water Conservation Dist.,* 131 Colo. 42, 52, 279 P.2d 420, 425 (1955). "Speculation on the market, or sale expectancy, is wholly foreign to the principle of keeping life in a proprietary right and is no excuse for failure to perform that which the law requires." *Id.* at 56, 279 P.2d at 427; *see Southeastern Colo. Water Conservancy Dist. v. Twin Lakes Assocs.,* 770 P.2d 1231, 1238 (Colo.1989).

Report of Water Rights Investigation & Appraisal     12 (1985).

Our cases repeatedly provide that "[c]ontinued and unexplained nonuse of a water right for an unreasonable period of time creates a rebuttable presumption of *intent* to abandon." *City & County of Denver v. Snake River Water Dist.*, 788 P.2d 772, 776 (Colo.1990)(emphasis added); *see Haystack Ranch v. Fazzio*, 997 P.2d 548, 552 (Colo. 2000); *Consol. Home Supply Ditch & Reservoir Co. v. Town of Berthoud*, 896 P.2d 260, 266 (Colo.1995).

Here, the nonuse is explained, but this explanation supports abandonment, and not the water court's conclusion that the presumption of abandonment was rebutted. The explanation for nonuse is that the ditch could not deliver the water to its place of use, and the owner did not wish to make the investment an actual water user would be required to make to maintain the priority of the water right.

A water right is decreed to a particular diversion structure for beneficial use by delivery through it. *Dallas Creek Water Co. v. Huey*, 933 P.2d 27, 39 (Colo.1997). Affirmatively deciding not to make repairs necessary to utilize a water right is convincing evidence of intent to abandon it. *Southeastern Colo. Water Conservancy Dist.*, 770 P.2d at 1241 (upholding finding of abandonment when ditches deteriorated and were not repaired); *Masters Inv. Co. v. Irrigationists Ass'n*, 702 P.2d 268, 270 (Colo.1985) (upholding finding of abandonment where ditch had washed away and was not replaced). Evidence of non-repair is especially persuasive where the owner ignored advice that the repairs were required. *Haystack Ranch*, 997 P.2d at 553. Failure to maintain the entire length of the ditch is also evidence of intent to abandon. *Southeastern Colo. Water Conservancy Dist.*, 770 P.2d at 1236–37.

We have considered economic difficulty a justifiable excuse for nonuse in very limited circumstances. We recognized that the Great Depression, material and labor shortages during World War II, and federal regulatory requirements can provide an excuse for nonuse. *Hallenbeck v. Granby Ditch & Reservoir Co.*, 160 Colo. 555, 568, 420 P.2d 419, 426 (1966). However, run-of-the-mill economic difficulties are not recognized. "Nonuse resulting from present economic difficulties, coupled with an expectation of a more favorable economic climate for future use, will not constitute justifiable excuse." *Southeastern Colo. Water Conservancy Dist.*, 770 P.2d at 1238.

Without doubt, the investment partnership tried repeatedly to sell the ranch and the water rights. However, in *Knapp*, we held that intent to sell a water right, including listing the right with a real estate agent, was not sufficient to overcome the presumption of abandonment raised by a long period of nonuse. 131 Colo. at 55–56, 279 P.2d at 427.

I would distinguish our decision in *Danielson v. City of Thornton*, 775 P.2d 11 (Colo. 1989), from this case. There, a developer acquired the water rights for use in a central water system for a subdivision it was creating. *Id.* at 21. It sought to obtain a change of point of diversion for the wells to effectuate its use. *Id.* at 21–22. Upon finding that a centralized water system would be impractical, it diligently and continuously attempted to sell the water rights to a party who would use the water under the water rights. *Id.* The wells were in good condition and capable of operation throughout the efforts to sell them. *Id.* at 16 n. 5. Within eight years, the developer sold the water rights. *Id.* at 17. The water court held that, under the circumstances, eight years was a reasonable time period to effectuate sale of the water rights.[2] *Id.* On appeal, we applied a legal standard that took into account the "totality of the evidence in evaluating whether a water right [had] been abandoned" and concluded that it had not. *Id.* at 20. In contrast, in this case, the investment partnership never had a use for the water, never effectuated a use, and when put on actual notice of the need to maintain the water rights, affirmatively decided not to repair the structure so the right could be utilized under its decree.

As we recognized in *Danielson*, efforts to sell the water right, in light of other evidence

---

2. In *Danielson*, both the water court and this court applied the totality of circumstances test. 775 P.2d 11, 17, 20. Both courts considered the developer's original plan to use the wells for a centralized water supply, the finding that this use was impracticable, and its diligent efforts to sell the wells. *Id.* In my view, under all the circumstances here, the water right was abandoned.

in the case, may be sufficient to overcome the presumption of abandonment arising from a prolonged period of nonuse. But, we also said that the presumption of abandonment is a strong one. *Id.* at 21. The *Knapp* anti-speculation basis for the abandonment doctrine continues to be good law, in my view.

A water right is a use right in the public's water resource; water that a senior cannot use belongs to juniors in the order of their decreed appropriation. *See Santa Fe Trail Ranches v. Simpson*, 990 P.2d 46, 54–55 (Colo.1999). Since 1972, owners of other decreed water rights in the over-appropriated Arkansas Basin have been using the water that the Derry No. 1 right could have utilized, if repairs to the ditch had been made.

The water court's order demonstrates a great deal of inclination towards the plans of Lake County for this water right, but these plans are irrelevant—for they cannot revive a water right the investment partnership left to the stream. *Haystack Ranch*, 997 P.2d at 554. As demonstrated by *Santa Fe Trail Ranches*—which involved an apparent thirty or forty year period of nonuse of the water right at its decreed point of diversion—developers often wish to reinvigorate or revive a water right that was not used. 990 P.2d at 51. Often, as in *Santa Fe Trail Ranches*, the developer is attempting to use a senior priority to augment a new or different use. This is what Lake County wishes to do; but, the abandonment doctrine guards against injecting water into what has become a paper right.

In this case, it is undisputed that no water was used under the Derry Ditch No. 1 for twenty-six years, nearly three times the statutory presumptive period for intent to abandon. § 37–92–402(11), 10 C.R.S. (2002). "The owner's mere declaration of intent, without the facts showing a reasonable justification for non-use, will not overcome the presumption." *Hallenbeck*, 160 Colo. at 567, 420 P.2d at 426. I disagree with the Majority conclusion that there is competent evidence in the record to rebut the strong presumption of

abandonment arising from the investment partnership's prolonged period of nonuse.[3] Maj. op. at 924–925. The investment partnership's decision not to repair the ditch is factually no different from those cases in which water courts and we have declared abandonment based upon prolonged failure to repair. Here, the evidence of holding the right for speculation is manifest. Like *Knapp*, this case involved twenty-six years of nonuse and "[o]n the whole their conduct is much more indicative of being speculative than operative." 131 Colo. at 51, 279 P.2d at 425.

Accordingly, I would reverse the judgment of the water court and, therefore, respectfully dissent.

I am authorized to say that Chief Justice MULLARKEY and Justice KOURLIS join in the dissent.

---

**3.** The water court and the Majority observe that the State Engineer had not placed this water right on the abandonment list. Maj. op. at 923. The Engineer's decision to list or not list a water right on the abandonment list is administrative in nature and says nothing about the owner's intent. The State Engineer's administrative action or inaction does not determine the existence or non-existence of a water right. *See Empire Lodge Homeowner's Ass'n v. Moyer*, 39 P.3d 1139, 1156–57 (Colo.2001).